RAILWAY COMPANY v. DODD.

Opinion delivered June 23, 1894.

1. *Pleading—Amendment.*

Where a complaint against a railway company alleged negligence on defendant's part committed in its capacity as a *carrier*, and the proof tends to show that it was committed in its capacity as a *warehouseman*, it is not error to permit the complaint to be amended to conform to the proof, after the case has gone to the jury.

2. *Instruction—Appellant cannot complain of its own error.*

Where defendant company asked for an instruction "that because the defendant did not keep a watchman is no evidence to charge neglect upon the defendant," although there was no evidence of defendant's failure to keep a watchman, it cannot complain because the court charged the jury that the fact that defendant had no watchman was not necessarily negligence, but could be considered in determining whether defendant was exercising ordinary care.

3. *Negligence—Warehouseman.*

In an action against a railway company for liability as warehouseman for goods destroyed in its depot, it appeared that a large quantity of cotton was piled on its platform near the depot and a short distance from the railway track; that at the time the weather was very dry; that the cotton was highly inflammable and without protection; that, about 15 minutes after a train passed, the cotton caught fire, which extended to the depot and destroyed plaintiff's goods. *Held*, that there was evidence to sustain a finding that defendant was guilty of negligence.

Appeal from Sebastian Circuit Court, Fort Smith District.

EDGAR E. BRYANT, Judge. .

*E. D. Kenna* and *B. R. Davidson* for appellant.

1. In an action of tort, if it is shown that the fire was started by the railway company, the burden shifts, and it devolves upon the railway company to show itself free from negligence. 49 Ark. 535. The rule is different in actions *ex contractu*. When a bill of lading exempts loss by fire, it must be proved that the fire resulted from negligence. 39 Ark. 523; 52 Ark. 26; 44 *id*. 208. Where the liability is as a warehouseman, there is no presumption of negligence, and the burden is on plaintiff to show it. 20 Iowa, 73; 11 Wend. 25; 29 Tex. 41; 46 N. Y. 271; 23 Cal. 268.

2. It was error to allow the amendment. It changed the character of the action. Mansf. Dig. secs. 5080; 5014; 3 Estee's Pl. & Pr. sec. 4445; 6 Col. 149;

79 Mo. 88; 84 N. Y. 420 ; 12 Wis. 378 ; 34 *id*. 378 ; 32 Ark. 244, 250.

3. The instruction as to a *watchman* was erroneous and prejudicial. An instruction that leads the jury to infer that the evidence tended to prove a certain state of facts is erroneous. 45 Ark. 256 ; 45 *id*. 492 ; 49 *id*. 147 ; 43 *id*. 289 ; 54 *id*. 336 ; 37 *id*. 593–8. The court has no right to tell the jury that importance should be attached to any circumstance, or what it tends to prove. 45 Ark. 165–172 ; 53 *id*. 381–386 ; 34 *id*. 696–702. The instruction assumed that there was no watchman. 52 Ark. 517–526 ; 14 *id*. 286–295 ; *Ib*. 530–537.

4. The stipulation that the carrier should not be liable for loss by fire inured to the benefit of subsequent carriers. 39 Ark. 148–158 ; 52 *id*. 26 ; 46 N. Y. 271 ; 145 Mass. 129.

5. There is no proof of negligence. Proof that the fire originated from sparks of an engine is not proof of negligence (in an action of this kind). 30 Ia. 420 ; 44 Ark. 208 ; 40 *id*. 375 ; 52 *id*. 26 ; 11 Wall. 129 ; 13 A. & E. R. Cas. 448 ; 2 *id*. p. 275 and note ; 29 Barb. 226.

*T. P. Winchester* for appellee.

1. The evidence is ample to show negligence. Negligence may be *imputed* to a railroad company if it suffers combustible material to accummulate in such quantities, places and seasons as render it liable to ignition. 49 Fed. Rep. 812 ; Sh. & Redf. Negl. sec. 678 ; 5 S. W. 824 ; 26 Wis. 228–9 ; 37 N. W. 222 ; 4 Neb. 274 ; 41 Fed. 643 ; 17 L. R. A. 33 ; 5 *id*. 591, 593.

2. The amendment did not change the action. Defendant was liable as a warehouseman *by contract*. Mansf. Dig. sec. 5080 ; 42 Ark. 57.

3. Appellant is estopped to say that the instruction as to a watchman was error—they first asked a charge on that subject.

4. The presence of an unusually large quantity of cotton around the depot may not be negligence *per se*, but, when taken in connection with the running of trains, the dry season, the inflammable nature of the cotton, a finding of negligence by a jury, properly instructed, ought not to be disturbed.

BATTLE, J.   On the 27th of October, 1887, C. H. Ferrell & Company delivered to the Louisville & Nashville Railroad Company, at Humboldt, in Tennessee, five boxes of fruit trees and plants, to be carried, delivered and forwarded to G. W. Dodd and W. W. Burnwath, at Hackett City, in this State, upon the following conditions: (1) The Louisville & Nashville Railroad Company, and the steamboats, railroad companies, and forwarding lines with which it is connected, and which received said property, should not be liable for loss by fire; (2) The contract of shipment should be executed, and the liabilities of "the companies," as common carriers thereunder, should terminate, "as to the forwarding carriers, respectively, on delivery to the next connecting carrier, and, as to the delivering carrier, on the arrival of the goods or property at the station or depot of delivery; and (3) the delivering company should be liable as a warehouseman thereafter;" and (4) it was "distinctly agreed and understood that the consignee or consignees should promptly receive and take away the fruit trees and plants as soon as the same were ready for delivery." The property was shipped under this agreement, and was received by the St. Louis & San Francisco Railway Company as a connecting carrier, and carried by it to Hackett City, and was stored in its warehouse for delivery to the consignees, on the 4th and 7th days of November, 1887; and while in the warehouse, and on the 13th day of the same month, between 6 and 7 o'clock p. m., were consumed by fire.

On the 24th of September, 1888, Dodd & Burn-wath brought an action against the St. Louis & San Francisco Railroad Company to recover the damages sustained by the loss of the trees and plants. They alleged in their complaint that the trees and plants were delivered, as before stated, to be shipped to them at Hackett City, "a point on the railroad line of the defendant;" that "the Louisville & Nashville Railroad Company, and its connecting lines, which connected with the defendant under an operating arrangement for through shipment of freight, as common carriers, in due course of transit, after delivery as aforesaid, delivered the trees and plants to the defendant, * * * as a common carrier, to be by it transported thence on its line to Hackett City, Arkansas, and there delivered to the plaintiffs;" that the defendant received the trees and plants "from the Louisville & Nashville Railroad Company and its connecting line as aforesaid, and undertook to transmit them over its lines as a common carrier, and to deliver them to plaintiffs; and that it has never delivered them to plaintiffs, or any one for them, to their damage." The defendant, in its answer, specifically denied all these allegations.

In the trial of the issues the facts were proved as we have stated them; and evidence was adduced tending to prove the following : The trees and plants were the property of plaintiffs, and were of the value of $800. The defendant's depot at Hackett City, in which they were stored at the time they were consumed by fire, was very near its railway track. Two hundred bales of cotton, which had been received by the defendant for shipment, and for which it had issued bills of lading, were on the platform and piled around the depot, and were thirty to thirty-five feet from the track. A mixed train of the defendant arrived at the depot on the morning of the 13th of November, 1887, and remained there ten or

fifteen minutes. At this time it was very dry, and the cotton was highly inflammable, and without any protection. About ten or fifteen minutes after the departure of the train a fire originated in the cotton, and spread thence rapidly to the depot, and in a short time destroyed it and its contents, among which were the trees of the plaintiffs.

Upon these facts the court instructed the jury, substantially, as follows:

"The determination of this case turns upon the single question as to whether defendant's employee or employees at Hackett City were guilty of negligence in the care of the trees, from which negligence the loss occurred."

"Before the plaintiffs can recover they must prove, by a fair preponderance of the evidence, negligence on the part of the defendant."

"Negligence is the want of ordinary care, that is, such care as an ordinarily prudent man would exercise in the place of, and under the same circumstances as, the party charged with negligence."

"The fact that the defendant had no watchman at the depot at the time of the burning is not necessarily negligence on its part; it is simply a circumstance for you to consider, for what it may be worth, in determining whether defendant was exercising ordinary care in preserving the trees from loss."

At the same time the defendant asked the court to instruct the jury, among other things, "that because the defendant did not keep a watchman is no evidence to charge neglect upon the defendant;" and the court refused to instruct in the form asked, but did in the manner we have stated.

While the jury were considering their verdict, the court, over the objection of the defendant, permitted the plaintiffs to amend their complaint as follows: "Plain-

tiffs further allege that said defendant company received fruit trees and plants at its depot at Hackett City, and so negligently and carelessly kept said goods that they were, by defendant's fault and negligence, wholly destroyed by fire in its depot building at Hackett City, and so wholly lost to these plaintiffs."

The jury returned a verdict in favor of plaintiffs against the defendant for $800.15 and six per cent. per annum interest thereon from the 13th of November, 1887, the day of the fire; and the court rendered judgment accordingly. The defendant saved its exceptions, filed a motion for a new trial, which was overruled, tendered a bill of. exceptions, which was signed, and filed the same, and appealed.

1. The first contention of the appellant is, the trial court erred in permitting the amendment of the complaint. The ground of its contention is, the amendment converted the action from an action *ex contractu* to an action *ex delicto*. But this was not done. The amendment showed only a breach of the contract that the appellant entered into when it undertook to hold the property of the appellees as a warehouseman. Every warehouseman for hire undertakes to exercise ordinary care and diligence in the preservation of the property intrusted to him. If he fails to use such care and diligence, he is guilty of negligence and a breach of his contract, and is liable for damages.

2. The appellant contends that the court erred in what it said in its instructions to the jury in respect to a watchman. In support of this contention, it says: "There was not a word in the testimony directed to the question of a watchman being employed or not employed. There was no allegation or proof directed to this point. There was absolutely nothing to apprise defendant that negligence would be insisted upon for the reason that no watchman was employed, and yet the

court takes this single circumstance in the case, and directs the attention of the jury to it, and from the instructions given the jury doubtless concluded that they were authorized to infer negligence from this circumstance." In attacking the instructions of the court in this manner, the appellant obviously failed to call to mind that it asked the court to instruct the jury "that because the defendant did not keep a watchman is no evidence to charge neglect upon the defendant." It virtually conceded that no watchman was employed, and the court, in response to its requests, told the jury that fact was not necessarily negligence, but a circumstance for them to consider, for what it was worth, in determining whether the defendant was exercising ordinary care in preserving the trees from loss. After it had called forth this instruction, it had no right to complain because the court had given an instruction upon the subject upon which it had demanded one, and to say that the instruction was calculated to lead the jury to believe that they had a right to infer negligence from the failure to employ a watchman. There is nothing in the instruction that intimates such a thing. It left to the jury to determine whether, in the exercise of ordinary care, it was negligence to fail to employ a watchman, having first defined ordinary care to be such care as an ordinarily "prudent man would exercise in the place of, and under the same circumstances as, the party charged with negligence;" that is to say, the defendant in this case. Under such circumstances, we see nothing in the instruction prejudicial to the appellant.

3. Evidence of warehouseman's negligence.        3.  Appellant insists that there was no evidence to show negligence, and sustain the verdict of the jury. In the contract in this case it was expressly stipulated that the liability of appellant as a common carrier should terminate on the arrival of the trees and plants at the station or depot of delivery, and that it should be liable

as a warehouseman thereafter. When, therefore, the property was stored in the appellant's depot at Hackett City, it became liable as a warehouseman, and bound to exercise ordinary care and diligence in the preservation of the property, which is such care and diligence as men of ordinary prudence in the same business usually bestow on property placed in their custody, and similarly situated in its exposure to loss. What constitutes such care and diligence is a question which depends for its answer upon the peculiar circumstances of each case, such as the nature and value of the property, its exposure to damage and loss, its proximity to danger from fire, the means employed to prevent or arrest the progress of fire, the location, character and construction of the storehouse in which it was placed; and in cases like this is a question peculiarly proper for the determination of the jury.

The depot or warehouse of the appellant, in which the property of appellees was stored at the time it was destroyed by fire, was, and had been for many days, surrounded by cotton—a highly inflammable material—at a time when the weather was very dry; and was near a railway track on which trains were passing daily. The cotton was liable to take fire from these trains, and communicate it to the depot. One of them passed ten or fifteen minutes before it was destroyed. The cotton caught fire, and the depot was consumed by it. These were facts from which the jury might have inferred that the fire originated in sparks from the engine of the train which had just passed, there being no evidence to explain its origin upon any other theory. All these facts tended to show that the property of appellees was destroyed through the negligence of appellant, and are sufficient to sustain the verdict of the jury in this court. *Barron* v. *Eldredge*, 100 Mass. 455; *Smith* v. *Railway Co.* L. R. 6 C. P. 14; *Chicago & Alton R. Co.* v. *Scott*, 42 Ill. 132; *Illinois Central R. Co.* v. *Frazier*, 64 Ill.

28; *Pittsburgh, Cincinnati & St. Louis Railroad Co.* v
*Nelson,* 51 Ind. 155; *Troxler* v. *Richmond & Danville*
*Railroad Co.* 74 N. C. 377.

Judgment affirmed.