MISSOURI PACIFIC RAILROAD COMPANY v. FOWLER.

Opinion delivered February 2, 1931.

R. E. *Wiley* and *Richard M. Ryan*, for appellant.

*Oscar Barnett*, for Pruitt, and *John L. McClellan* and *Verne McMillen*, for Fowler *et al.*, appellees.

MEHAFFY, J. Appellees George W. Fowler and Westchester Fire Insurance Company instituted this action in the Hot Spring Circuit Court against appellant, Missouri Pacific Railroad Company, to recover damages for the alleged setting out of fire which destroyed appellee's property.

The appellee, George W. Fowler, was the owner of a dwelling house in Barnett's Suburban Addition to the city of Malvern. The value of the house was alleged to be $762.09. The appellee alleged that the fire originated from sparks from a locomotive engine operated by appellant on its track a short distance from said house.

The appellee, Westchester Fire Insurance Co., on January 20, 1928, issued its policy of fire insurance whereby it agreed to indemnify appellee Fowler against loss or damage by fire for a period of one year.

The fire occurred on November 23, 1928. On the 13th day of July, 1929, the Westchester Fire Insurance Company paid George W. Fowler the sum of $380 in settle-

ment of its liability under its policy, and Fowler assigned and transferred to the Westchester Fire Insurance Company his claim against the Missouri Pacific Railroad Company in the sum of $380.

The appellant, on January 20, 1930, filed answer denying all the material allegations in the complaint, and alleged that the house burned by the negligence of plaintiff in not protecting it from fire hazards, and in not keeping the premises clear of fire hazards, and in not looking at and inspecting said building, and keeping same in a safe state from fire hazards, and in the condition in which the property was being kept. Appellant also alleged that Fowler and his agents and servants were negligent in not extinguishing the fire after discovering same, and in not using ordinary care in extinguishing same; and alleges that this was contributory negligence which barred appellees' right to recover.

Appellees, on the 22d day of July, 1930, filed a demurrer to paragraph 2 of the answer in which it was stated that the allegations in reference to contributory negligence in said paragraph do not allege facts constituting a legal defense, and that said paragraph attempts to plead as a defense to this action the contributory negligence of the plaintiff which is not a bar to plaintiff's right, and which is no defense to the allegations of the complaint. The court sustained the demurrer, and appellant excepted.

On the 7th day of April, 1930, appellee, Adam Pruitt, filed an intervention asking for damages against appellant in the sum of $382.09, alleging that Fowler had settled with the insurance company and made the assignment to the company without authority. He also asked damages in the sum of $350 for destruction of household goods and personal property which was in the house at the time it was destroyed by fire.

Appellees, George W. Fowler and Westchester Fire Insurance Company, filed motion to dismiss intervention

of Pruitt, and the court granted said motion in part, to which order the intervener excepted.

On the same day the appellant filed motion for continuance. Thereafter on April 8, 1930, plaintiff was permitted to withdraw his motion to strike intervention, and the defendant was given until next term of court to file another and supplemental answer to the intervention, and the cause was continued on motion of defendant and set for trial July 22, 1930.

On April 8, 1930, appellant filed answer to Pruitt's intervention, denying the allegations in said intervention and pleading negligence of intervener and the owner. The Westchester Fire Insurance Company introduced the certificate of the Insurance Commissioner and the State Fire Marshal showing that it was a corporation under the laws of the State of New York and duly authorized to do business in Arkansas. George W. Fowler owned the dwelling house which burned, and Adam Pruitt was living in the house at the time. At the time of the fire there was insurance on the building, but Fowler had no interest in the household goods which were in the dwelling. These belonged to Pruitt, the intervener.

The insurance company had paid Fowler $380, and Fowler had executed an assignment to the Westchester Fire Insurance Company. The railroad was about 40 steps from the house that was burned.

Appellee Fowler, the owner of the house, was not at the fire, and did not know how the fire originated.

Appellee Pruitt, who lived in the house, worked for the owner and did not pay any rent on the house. The house was burned in November, 1928, and the owner wrote to the appellant about January 4, 1929.

Adam Pruitt, the intervener, who lived in the house at the time it was destroyed by fire, said the house was about 30 or 35 steps from appellant's tracks. When the fire caught, Pruitt and his wife had not gone to bed. When he discovered a light shining in the yard, he went out of the house and looked, and there was a blaze on the

top of the house on the southeast corner. The wind was high, and shingles were old and dry. Witness knocked a window out and got some of his things out of the house. The house was totally destroyed. This witness testified that they did not have any fire in the house that night; that it was not cold that night. He and his wife were sitting in the hall, and there was no fire in the hall. There had not been any fire in the heating stove but had been a fire in the kitchen earlier in the night. The freight train passed about 20 or 25 minutes before he discovered the fire. There was not any fire between the house and the railroad track, and the wind was blowing in the direction of the house. Witness lost nearly all of his household goods. The fire damage was $460. The fire caught somewhere between nine and eleven o'clock P. M. witness thought.

Other witnesses testified that the fire was discovered about 30 minutes after the train passed.

Witnesses for appellant testified that the engines that passed the house which was destroyed that night were equipped with wire netting spark arresters; that the spark arresters were in good condition, and that sparks could not have been thrown from the engines on to the house and set it afire.

The freight train which passed the place a short while before the fire was discovered, the train dispatcher said, left Malvern at 11:18 and had 66 cars in the train pretty heavily loaded.

A number of witnesses testified that there was no fire between the house and the railroad track; that the spark arrester was in good condition; that it could not throw live sparks the distance from the track to the house; and the engineer and fireman operating the train testified that it was not throwing sparks.

There was a verdict and judgment for Fowler and the Westchester Fire Insurance Company for $650 and a verdict and judgment in favor of Adam Pruitt for

$250. Motion for a new trial was filed, overruled, and exceptions saved, and the case is here on appeal.

The question whether appellant was negligent in the operation of its train is not involved. If the evidence is sufficient to warrant the jury in finding that the fire that destroyed the property was caused by sparks from a locomotive, the defendant would be liable.

"All railroads which are now or may be hereafter built and operated either in whole or in part in this State shall be responsible for all damages to persons or property under such regulations as may be prescribed by the General Assembly." Section 12, art. 17, Constitution of Arkansas.

The statute provides that when fire from a locomotive destroys property, the defendant cannot plead or prove that it was not the result of negligence or carelessness. It is only necessary under the statute to show that the fire which resulted in the injury originated or was caused by the operation of the railroad. Section 8569, C. & M. Digest.

The house owned by Fowler, which was destroyed by fire, was 40 or 50 steps from the railroad track. Somewhere near eleven o'clock in the nighttime a freight train of 66 cars passed this house where Pruitt lived, heavily loaded and the fire was discovered on the roof of the building next to the railroad track about 20 or 30 minutes after the freight train passed. The engine pulling the freight train was a coal burner. There was a strong wind blowing from the railroad tracks in the direction of the house. There was no fire in the building and had not been that day except the fire in the kitchen, which had been out some time. Pruitt and his wife had not gone to bed, and they discovered the fire on the roof as stated, shortly after the freight train passed.

It is earnestly contended by the appellant that there is no evidence that the fire which destroyed the dwelling house and household goods was caused by the negligence of the appellant. Of course, it is immaterial whether the

appellant was guilty of negligence or not. But appellant argues that there is not a single witness who even comes close to testifying that the fire originated from sparks thrown from appellant's locomotive. It is true that no witness testified that the engine was throwing sparks. The evidence, however, is undisputed that the heavily loaded freight train passed on the track near the house, and that shortly thereafter a portion of the roof on the side of the house next to the railroad was discovered to be on fire, and there was no other way, according to the evidence, in which this fire could have originated.

Appellant correctly contends that the burden was upon the appellees to show by some fact or circumstance that the fire originated from the locomotive.

Appellant calls attention to and relies on *Blanton* v. *Mo. Pac. Rd. Co.*, 182 Ark. 543, 31 S. W. (2d) 947. In that case we said: "When the evidence established the fact that a train has passed and shortly thereafter a fire was discovered burning nearby, it is sufficient to justify a finding that the train put out the fire, but it does not justify the court in telling the jury that there is a presumption that it did. The jury are to find from the evidence, direct and circumstantial, whether the railroad company set out the fire."

"We have steadily adhered to the rule that, 'in the absence of direct and positive testimony as to the origin of the fire which consumes inflammable property situated near a railroad track soon after the passing of a locomotive, the inference might be drawn that the fire originated from sparks from the passing locomotive.'" *Reeves* v. *St. Louis-San Francisco R. Co.*, 171 Ark. 1176, 287 S. W. 166; *Chicago, R. I. & P. Ry. Co.* v. *National Fire Ins. Co.*, 151 Ark. 218, 235 S. W. 1006; *St. Louis-San Francisco R. Co.* v. *Dodd*, 59 Ark. 317, 27 S. W. 227.

When passing on the sufficiency of the evidence to support the verdict, we must give the evidence which tends to support the verdict its highest probative value.

When fire is discovered shortly after a train has passed, and the proof does not establish some other origin of the fire, the jury is justified in finding that the fire originated from sparks from the engine. *Helena Southwestern Ry. Co.* v. *Coolidge,* 169 Ark. 552, 275 S. W. 896; *Chicago, R. I. & P. Ry. Co.* v. *Cobbs,* 151 Ark. 207, 235 S. W. 995.

The evidence in this case was sufficient to justify the jury in reaching the conclusion that the fire originated from the locomotive.

It is next contended by appellant that the court erred in sustaining the demurrer of appellees to the second paragraph of appellant's answer as to the plea of contributory negligence.

Appellant cites and relies on *Clark* v. *St. L. I. M. & S. R. Co.,* 132 Ark. 257, 201 S. W. 111. In that case this court said that the instruction on contributory negligence was proper, but the court said in that case: "For the destruction of, or injury to, property caused by such omissions on the part of servants and employees of railway companies, such companies would be liable, provided such omissions constituted negligence upon the part of such employees, but in that case the companies would be liable, not under the statute, but under their common law liability for injury and the consequent damage caused by their negligence."

In that case the negligence charged against the railroad company was that its servants and employees carelessly and negligently kindled the fire on the right-of-way and negligently allowed it to spread and burn and consume plaintiff's property. The railroad company contended that the plaintiff had an agent to look after his mill, and that he knew of the fire burning near the mill, and knew, or should have known, that the mill was exposed to destruction by fire, and that he failed to use ordinary care to prevent same.

There is no question of negligence in the instant case. In the last case referred to the court also said, speaking

of the act making railroad companies liable for fires originating from its locomotives: ''Yet, when construed as a whole, it shows that the intention of the Legislature to make the railway company liable absolutely in damages for injury to or destruction of property caused by such extraordinary hazards as the operation of a locomotive engine, machinery, trains, cars, or other things, when used or operated upon the railroad, or by any of their servants or employees in the operation of such machinery upon the railroad tracks, or by the positive affirmative act of the servants or employees of railway companies in the operation of the railroad.''

As stated in the case relied on by appellant, the statute makes the railroad company absolutely liable for the destruction of property caused by the operation of its locomotive. Moreover, the plea of contributory negligence did not state any facts constituting the negligence of the appellee, but mere conclusions. The answer to the intervention had the same plea of contributory negligence, and no demurrer was filed to it.

If the fire originated, as contended by appellees, from sparks from the engine, we are unable to see how any act of the appellees could in any way contribute to setting out the fire.

It is true appellant also claims that appellees were guilty of contributory negligence in their failure to prevent the destruction of the property after the fire was discovered, but the evidence not only does not show this, but it shows there was no contributory negligence.

At the time the fire originated, the roof of the house was dry and evidently caught very easily, but, when appellee, Pruitt, discovered it, he could not extinguish it, and the evidence shows that he saved all of his property that he could save.

The rule stated in Elliott on Railroad, vol. 3, 775, is as follows: ''Where there are statutes in force imposing an absolute liability upon a railway company for fires set by its locomotives, the question of the owner's con-

tributory negligence is generally held to be immaterial and to have no effect on his right to recover. We do not believe, however, that such a strict rule, even where there is an absolute statutory liability, is entirely just. There may be cases where, after the property is set on fire by the railway company, the owner could by slight effort save the property from destruction, and in such cases it seems to us that it would be unjust to compel a railway company to pay an owner damages notwithstanding an absolute statutory liability."

There is in this case, however, no question of contributory negligence, and the undisputed proof shows that the property owner did what he could after he discovered the fire.

In one of the cases cited by Elliott on Railroads it is said: " 'We are at a loss to see how the doctrine of contributory negligence can be invoked as a defense where there is no law requiring precautionary action on the part of the party damaged, and no question of negligence on the part of the corporation can be made or adjudicated.' Of course, if a party should knowingly or purposely place his property in a situation where sparks from a passing engine would be likely to ignite and burn it, he could not recover in case of its destruction; but such an act would scarcely come within the definition of contributory negligence." *Union Pac. D. & G. Ry. Co.* v. *Williams,* 3 Colo. App. 526, 34 Pac. 731.

If the owner of property should stand by and wilfully or purposely permit his property to be destroyed by a fire set out by a locomotive, he could not recover, but, as stated by the Colorado court, this would scarcely come within the definition of contributory negligence. Of course, the property owner's conduct could be such that it would be his fault altogether that it was destroyed, but it would not be contributory negligence. Contributory negligence means negligence on the part of the injured party which contributes to the injury caused by the negligence of the other party. In this case it is wholly imma-

terial whether the railroad company was guilty of negligence or not. If it set out the fire, it is liable for damage done by the fire.

It is next contended by the appellant that the court erred in permitting the owner to testify as to the value of the personal property destroyed. Any person, owner of personal property, may testify as to its value. Witnesses testifying to the value of property merely give their opinion. There was no error in permitting the owner to testify as to the value of his property.

It is next contended that the case should be reversed because the court permitted Pruitt to testify to a conversation and an offer to compromise. It is contended that this testimony was highly prejudicial; that the section foreman was not an officer or agent of the company, and had no right to make any offer of settlement or to bind the railroad company in any manner. It is contended that the effect of this testimony was to tell the jury that the appellant had admitted liability. We do not agree with appellant in this contention.

The witness, U. G. Heath, testified that he was the section foreman at Malvern, and had been employed in that capacity for five years; that he went down to Pruitt's next morning after the fire; that it was his duty to report fires along his section; and that he measured to the railroad track from the nearest point of the house; that he does not remember anything that was in his report, but he knows he made it because it was his duty to do so. He denied all the statements made by Pruitt with reference to the conversation, but Pruitt's statement does not tend to prove any offer of compromise, and, of course, would not be objectionable as evidence of an offer of compromise. There is no claim on the part of Pruitt that the section foreman offered him anything, and we do not think the evidence of Pruitt was prejudicial.

It is next contended by appellant that the court erred in permitting Mary Pruitt, the wife of Adam Pruitt, to testify in the case. When Mary Pruitt was offered as a

witness, objection was made because she was the wife of Adam Pruitt, one of the parties to the suit, and the court stated she might testify as to Fowler, but stated that, being the wife of Adam Pruitt, her testimony could not be considered only as it would relate to the claim of the plaintiff, George Fowler. Certainly, the appellant could not deprive the plaintiff of the use of a witness because the witness happened to be related to the intervener. Her testimony was incompetent for or against Pruitt.

It is next contended that it was error to permit witness Hardy Hill to testify as to the replacement value of a new house. This testimony was competent, not as showing that the house was of the value that a new house would cost, but was one of the means of proving the value, and it was evidently not understood by the party or the jury as establishing the cost of a new house as the value of the old one. The evidence showed that the house had been built five or six years, and, of course, nobody believed that it was of the same value that it would cost to build a new house, and the value fixed by the jury was very much less than the evidence of Hill showed a new house would cost.

Appellant argues that instruction one, given at the request of the appellee, was erroneous because it told the jury railroad companies were liable for damages to property caused by fire from the operation of locomotives, regardless of whether said fire was the result of negligence on the part of the company or not. There is no question of negligence involved in this case. If the railroad company set out the fire by the operation of its locomotive, it is liable whether it was guilty of any negligence or not. Another objection appellant urges to the instruction is that it left out the defense of contributory negligence. What we have already said answers this objection.

Appellant's objection to instruction No. 2 is that there is no evidence that the fire was caused by defendant's locomotive.

Appellant objects to instruction No. 3, given at the request of appellee, and urges that it was an instruction on the weight of evidence. In this instruction the court simply told the jury that the setting out of the fire might be proved by circumstantial evidence if they believed from all the facts and circumstances that the fire was set out by sparks, etc., and told them in this instruction that they did not have to prove this by an eyewitness. This was a correct instruction. If it had to be proved by an eyewitness, then one could not recover for the destruction of his property unless some person saw the fire originate.

To support its contention with reference to this instruction, appellant cites and relies on *Blanton* v. *Mo. Pac. R. Co.*, 182 Ark. 543, 31 S. W. (2d) 947. We held in that case that it was sufficient to show that the train passed and shortly thereafter a fire was discovered burning nearby, but we held that it was improper for the court to tell the jury that there was a presumption that the fire was set out by the railroad company.

In the instant case the court did not tell the jury there was any presumption, but told the jury that the setting out of the fire might be proved by circumstantial evidence.

It is next contended that the court erred in refusing to give appellant's instruction No. 7a. This instruction was on the question of contributory negligence, and there is no evidence upon which to base this instruction.

The same is true with reference to instruction No. 8a. It in effect told the jury that appellees could not recover if they were guilty of contributory negligence. There is no evidence in the record justifying an instruction on contributory negligence. The evidence in the case shows on the part of appellees that the freight train of 66 cars, heavily loaded, passed the house shortly before the fire was discovered, and that the wind was blowing from the railroad tracks toward the house.

Appellant's witnesses testified that the engine was equipped with a wire netting spark arrester in good condition, and that it could not throw out sparks and set fire to the house. These were questions of fact properly submitted to the jury, and the verdict of the jury, where there is any substantial evidence to sustain it, cannot be disturbed by this court.

The judgment of the circuit court is affirmed.