MISSOURI PACIFIC RAILROAD COMPANY *v.* BARRON.

4-5070

Opinion delivered May 23, 1938.

*Thomas B. Pryor* and *H. G. Combs,* for appellants.
*States & Booth,* for appellees.

MEHAFFY, J. J. L. Barron, Laura Barron and Bertha Branch brought separate suits against the Missouri Pacific Railroad Company, which suits were afterwards consolidated and tried together, but separate verdicts were rendered. There was a verdict and judgment for J. L. Barron for $150, for Perry Norton for $100,

and for Laura Barron for $125. After the suits were filed Bertha Branch died and Perry Norton was appointed administrator. The case continued in his name. To reverse the judgments above mentioned, this appeal is prosecuted.

Appellants say that the main question presented in this appeal for consideration of the court is whether there was any substantial evidence to support the verdict of the jury, and this is the only question argued by appellants.

After the complaints were filed, the appellants filed demurrer to each complaint, which demurrers were overruled, and answers were then filed in which appellants denied all of the material allegations of the complaints, and denied that the appellees had been damaged in any sum.

Jim Byers testified that he lived two miles south of Jonesboro; he was road supervisor in Craighead county in 1936 and knows where the creek known as Birch Creek Ditch crosses the Cotton Belt, the Missouri Pacific and the county highway; Birch Creek is a natural stream; he had occasion to go to the bridge on the county highway crossing of Birch Creek in 1935; the water had washed out the approach of the bridge on the east side; he noticed the water as it passed under the railroad trestle of the Missouri Pacific; there was not much opening under the right-of-way; not enough water getting away from there as fast as it should and the water was turning down the county road; it went over the highway in some places something like knee deep; the trestle is located something like 90 feet from the natural banks of the creek; there are no openings at all on the side of it; the trestle fits down into the bank of the creek with just a small opening in the center, and all the rest of it filled up; he thinks there is a ten-foot opening in the center; the depth of the channel of the creek is something like four or five feet; the creek bank holds more water than the trestle will allow.

On cross-examination this witness said he went up there to see about the county road in 1936; it looked like

it was practically washed away; the water had to cross the highway before it reached the Missouri Pacific track; the water first comes through an opening under the Cotton Belt track; witness does not know how big the opening under the Cotton Belt track is; the water washed away the highway before it got to the Missouri Pacific; the water ran south down the road; that is the natural flow for it; when the creek got full the opening at the tracks of the Missouri Pacific was not sufficient to let it go through and it backed up and down the road; the natural flowage is southeast from the Missouri Pacific Railroad; appellees' lands lie west of the Cotton Belt; this land is right in the edge of the hills; it is bottom land and an unusual amount of rain will overflow most of the land both on the west and east side of the track.

Joe Barron, one of the appellees, testified that he lived south of Jonesboro and had lived there 42 years; lived on his present place since 1930; is a farmer and his land is located west of the right-of-way and dump of the Cotton Belt Railroad; his mother's land is located between his and the right-of-way of the Cotton Belt; the land of Bertha Branch now deceased, lies north and northwest of witness' farm; his land is on the north side of Birch Creek and Perry Norton's land is north; his mother's land is north and south of the creek; there was an overflow in 1933, two or three overflows that year; is familiar with the crossing of Birch Creek at the point where it crosses the county highway; Cotton Belt Railroad and Missouri Pacific Railroad; the Missouri Pacific trestle at the point where Birch Creek crosses the highway is 96 feet long and there is 10 feet of current water five feet deep and 10 feet wide; the section hands take spades and clean out the dirt and throw it along the right-of-way dump; the water comes from a half mile west of the railroad to the railroad; the employees of the Missouri Pacific have cleaned out the channel about three times in a period of two years; the trestle sets within the natural banks of the creek, about 30 feet on each side of the channel; the trestle extends down into the bank of the creek about three inches; witness says

he means about 18 inches towards the bottom of the creek that the trestle extends down into the natural bank of the creek; the Cotton Belt trestle is open 60 feet for the water to go through; the Missouri Pacific has practically 10 feet for the water to go through; there is no obstruction to the free flowage of this creek at the point where it crosses the right-of-way and dump of the Cotton Belt Railroad; there is a bridge across the county highway which is about 40 feet wide; this is not as wide as the natural bank of the creek, but it has from five to seven feet from the bottom to the top; the width of the channel under the bridge is 35 to 40 feet; when the water strikes the sills of the Missouri Pacific Railroad it backs the water up from there a little over a mile west and through the north and south of the ditch, and blocks the water; the railroad company constructed dikes or dams along the natural bank of the creek in 1935; these dikes are practically two feet high; when the creek reaches the right-of-way of the Missouri Pacific it takes a southeast course; there is little curve on the east side of the Missouri Pacific Railroad; the dikes help to hold the water back all the way west. This witness testified at length about the crops and the damage to same, but there is no claim that the damages are excessive, and it is, therefore, unnecessary to set out the evidence as to the damages.

This witness, Joe Barron, called attention of the railroad company to this condition in 1932, told them the trestle was down in the creek and holding the water back; notified them and met the roadmaster and section foreman; after they were notified they sent an engineer up there to look the situation over; they sent two men who came to witness in the field and went down with him and made an examination of the trestle where the creek crosses it and stated they would go back and make some figures and send in to have the trestle raised up; witness saw Mr. Ellis in 1933 at the railroad trestle and asked him when he was going to raise it; Ellis said they were going to raise it as quick as they could get to it; later, witness went to Poplar Bluff, Missouri, and saw Mr. Daugherty, the superintendent; he said he would take the

matter up further and have the trestle taken out of the ditch if it were damaging witness; he said he would do it immediately; Mr. Ellis came back to see witness and told him they were going to raise the trestle; some time after that witness saw Mr. Ellis, and told him they had not started on the trestle yet and Ellis said they had given it up; they were not going to do anything to it; there is not as much opening in the Missouri Pacific as in the Cotton Belt and not as much opening through the Missouri Pacific trestle as in the highway bridge; the creek comes on the north side of witness' land; water comes out of the hills to form the creek and this is the natural drain for it; when the water hits the railroad trestle the sills are 18 inches too low and it holds it back and lets it spread out over witness' land; his land is located on the west side of the railroad and more of it is located at the foot of the hill; he keeps the ditch cleaned out through his farm; the water goes over the highway instead of under the trestle because the water cannot get through the trestle in the Birch Creek ditch; the natural flow of Birch Creek is east and south.

Ed Barron, a brother of appellee, testified to substantially the same facts as were testified to by appellee Barron.

Albert Johnson testified for appellees. He stated that he was a farmer and familiar with Birch Creek where it crosses the Missouri Pacific; the bottom part is below the level of the bank; if the trestle were even with the top, the natural channel of the creek would carry more water; there was nothing that witness knew of in the Cotton Belt trestle to obstruct the flow of water, nothing at the county highway to stop the flow of water; the main place that obstructs the flow of the water is the Missouri Pacific Railroad trestle; the Cotton Belt has more opening than the Missouri Pacific trestle; witness measured it about two or three years ago; the length of the Missouri Pacific trestle is something like 90 feet and the Cotton Belt is nearly the same; witness testified that the opening under the Missouri Pacific was something more than 10 feet.

Perry Norton testified to substantially the same facts as to the opening.

The evidence of appellants' witnesses was in conflict with the evidence of appellees' witnesses. The evidence above set out is positive to the effect that there was no obstruction of the water until it reached the trestle of the Missouri Pacific Railroad Company, and that the opening under said trestle was insufficient to take care of the natural flow of water. The engineers, according to the testimony of appellees, looked the situation over for the appellant and decided that the trestle should be raised. Several conferences were had with reference to raising the trestle, and the railroad company finally notified appellee that they were not going to do anything about it. This was after they had repeatedly told appellee that they would correct the matter by raising the trestle.

In determining the sufficiency of the evidence to sustain a verdict, the Supreme Court views the evidence in the light most favorable to the appellee, and will not set aside a verdict if supported by substantial evidence. *Home Life Ins. Co. v. Miller*, 182 Ark. 901, 33 S. W. 2d 1102; *M. P. Rd. Co. v. Fowler*, 183 Ark. 86, 34 S. W. 2d 1071; *M. P. Rd. Co. v. Sandifur*, 183 Ark. 196, 32 S. W. 2d 316; *Mosley v. Raines*, 183 Ark. 569, 37 S. W. 2d 78; *Republic Mining & Mfg. Co. v. May*, 184 Ark. 786, 43 S. W. 2d 742.

If there was no substantial evidence it would be the duty of the court to set aside the verdict. But there is substantial evidence in this case, and while it is contradicted, even if we thought that it was against the preponderance of the evidence, it would still be our duty to sustain the verdict.

Byers, the road supervisor of Craighead county, testified that there was not much opening under the right-of-way of the Missouri Pacific, not a large enough opening to permit the water to go through as fast as it should. He testified that the trestle fits down into the bank of the creek with just a small opening in the center, and that the rest of it is filled up. He thinks there is a 10-foot

opening in the center. Certainly it cannot be said that this is not substantial evidence. He also testified that the bottom part of the trestle was below the level of the bank, and that the flow of water was not obstructed by the Cotton Belt trestle nor the highway; that the main place that obstructs the flow of the water is the Missouri Pacific trestle.

Joe Barron, one of the appellees, testified that the opening under the Missouri Pacific trestle, was 10 feet, and that the employees of the Missouri Pacific had cleaned it out three times in the last two years. He also testified that there was no obstruction to the free flowing at the point where it crosses the right-of-way of the dump of the Cotton Belt, and that when the water strikes the sills of the Missouri Pacific trestle it backs the water up a little over a mile west.

Ed Barron testified to substantially the same thing. All of them that knew the situation testified that the water was not obstructed by the highway nor by the Cotton Belt, but that it was by the Missouri Pacific. Whether this evidence was true or not was a question for the jury and not for this court.

The correct rule is stated by Judge RIDDICK in the case of St. Louis, Iron Mountain & Southern Ry. Co. v. Osborn, 67 Ark. 399, 55 S. W. 142, as follows:

"But the question as to whether the plaintiff was soliciting at the time of his ejection was submitted to the jury, and their finding was in favor of the plaintiff. Although the finding seems to us to be against the preponderance of the evidence, still it has evidence to support it, and, being properly submitted to the jury, the decision of the jury is binding upon us."

In the instant case the issues were properly submitted to the jury under instructions that are not complained of, and the decision of the jury is binding upon us. This rule has been consistently followed by this court from the earliest cases.

The judgment is, therefore, affirmed.