MISSOURI PACIFIC RAILROAD COMPANY v. JOHNSON.

4-5593                                    133 S. W. 2d 33

Opinion delivered October 23, 1939.

*Thomas B. Pryor, David R. Boatright* and *W. L. Curtis,* for appellant.

*C. E. Izard* and *R. S. Wilson,* for appellee.

BAKER, J. This appeal comes from Crawford circuit court. A judgment was there rendered upon a complaint alleging that the defendant negligently set out a fire on the right-of-way and negligently permitted the fire to spread so as to burn around and close to the home of appellee where his wife lay sick and helpless with tuberculosis. At this particular time she was confined to bed in a Burr Cottage, a structure built for tuberculosis patients, the walls being largely of screen wire so that fresh air was always available, and on that account she, perhaps, suffered more severely as heavy smoke and fumes were blown into the cottage where she rested.

The allegations were further to the effect that she suffered severely on account of the smoke and fumes, not only at the time of the occurrence, but continued thereafter until her death a few months later; that Lee Johnson himself, on account of her increased suffering, was required to stay, or remain at the home to aid or wait upon her during this period. This suit was to recover for such additional suffering as Mrs. Johnson may have endured by reason of the smoke and fumes and for Johnson to recover additional expenses on account of doctor and medical bills and for loss of time, loss of com-

panionship on account of this increased suffering and aggravated condition from causes alleged.

It was alleged, and there was proof offered to support the allegation that defendant's right-of-way had been permitted to grow up and was covered with dry grass and stubble of inflammable nature; that grass and weeds along the right-of-way were sufficient to carry the fire toward and around the house or home of Mr. and Mrs. Johnson. Sectionmen of the railroad company were notified of the fire and joined neighbors and friends of the Johnson family in fighting to get the fire under control. The proof is ample that those who were fighting the fire set out a back-fire around the Johnson house and barn and that from these back-fires made necessary by the burning grass the flames, caused considerable smoke. The smoke covered and filled the home of Johnson and particularly the Burr cottage where Mrs. Johnson was confined. She was severely strangled, much excited and probably frightend. We think it undisputed that, thereafter, her sufferings were much increased over what they had been prior to that time. There was greater weakness, and thereafter she was unable to speak above a whisper, and it was shown that only a short time before there was evidence of prospective recovery. With this general statement of facts we proceed to a presentation and discussion of the diffcult proposition of law presented on this appeal.

The appellant insists, and appellee concedes that if this action may be maintained it must be founded upon the negligence of the appellant in setting out the fire and permitting it to spread. Indeed, it was upon that theory that appellee filed the suit, and it is not contended that it was based or sustained in any particular bv the statute making railroads responsible for damages by fire originating upon and spreading from their rights-of-way. Section 11147, Pope's Digest.

Appellee shows that a train had passed going north or toward Fort Smith, only a few minutes before the fire was discovered burning on the right-of-way, and at

places on the railroad dump along the rails where there were dry weeds and grass. and inflammable tinder easy to catch fire and burn. The fire spread rapidly, being driven by a wind blowing in the direction of Johnson's home. The appellant denies the alleged negligence and offers in proof the fact that its spark arresters on the locomotive were inspected before the train left North Little Rock and upon its arrival in Fort Smith, one inspection being before the fire occurred and the other immediately after, and such arresters were found to be in good condition upon such examinations.

It is urged most strongly by appellant that the proof of this answers the contentions of negligence made by appellee. This court has heretofore given consideration to very similar propositions and is not now without a guide or precedent in such matters.

One of the first cases on this question which we wish to consider is that of *St. Louis, Iron Mountain & So. Rd. Co.* v. *Thompson-Hailey Co.*, 79 Ark. 12, 94 S. W. 707. This case raised a question of negligence in the matter of damages by fire prior to the passage of what is now § 11147, Pope's Digest, which fixes liability upon railroads for losses by fire set out by locomotives. It was there held "a verdict that a fire was caused by the negligence of the defendant railway company will be supported by evidence that the fire was communicated by sparks from defendant's engine, and that the emission of sparks was caused by negligence of the company either in failing to provide suitable appliances to prevent the escape of sparks or in the operation of the engine."

A striking pertinent announcement was made by this court in the case of *Batte* v. *St. Louis Southwestern Ry. Co.*, 131 Ark. 568, 199 S. W. 907, wherein it was held: "It is then the duty of the railroad company, if it would escape liability, to show that its engine was supplied with the best known appliances to prevent the escape of cinders, that said appliances had been duly inspected, and were in good repair at the time the plaintiff received the

injury, and that its engine was being properly and skill-fully managed and operated at the time the injury occurred.''

From these striking applicable authorities it appears that the railway company might be held to be negligent in the matter of a fire originating on its tracks and right-of-way under stated conditions, even though it were able to show that its spark arresters or other appliances were of the latest or approved design, because it was held in the cases cited that the duty devolved upon the railroad company, not only to prove these salient facts, but also show that the engine was being skillfully managed and operated at the time of the injury.

The error in the first case cited arose out of the fact that the court instructed the jury that an absolute duty was imposed on the railroad company to exercise ordi-nary care to use the best appliances and to keep them in good condition. We are indebted to appellant for these citations upon which he relies as supporting the conten-tion of error. The appellee concedes the applicability of the authorities cited but suggests there is not one iota of evidence in the entire record tending to show that the engine or locomotive which is alleged to have set out the fire, was operated with that degree of care required by the authorities mentioned.

In response to appellant's contention, appellee cites us to numerous authorities. *Blanton* v. *Missouri Pac. Rd. Co.,* 182 Ark. 543, 31 S. W. 2d 947; *Missouri Pac. Rd. Co.* v. *Fowler,* 183 Ark. 86, 34 S. W. 2d 1071; *Reeves* v. *St. L.-San F. Ry. Co.,* 171 Ark. 1176, 287 S. W. 166; *Chicago, Rock I. & Pac. Ry. Co.* v. *National Fire Ins. Co.,* 151 Ark. 218, 235 S. W. 1006; *St. Louis-San F. R. R. Co.* v. *Dodd,* 59 Ark. 317, 27 S. W. 227.

A selected case from these citations is *Missouri Pac. R. R. Co.* v. *Fowler, supra,* it is there said: ''When fire is discovered shortly after a train has passed, and the proof does not establish some other origin of the fire, the jury is justified in finding that fire originated from sparks from the engine. *Helena S. W. Ry. Co.* v. *Cool-*

*idge,* 169 Ark. 562, 275 S. W. 896; *Chicago, R. I. & Pac. R. Co.* v. *Cobbs,* 151 Ark. 207, 235 S. W. 995.''

There is so made a case of *prima facie* negligence, not rebutted by other evidence to the effect only that the spark arresters were in good condition. No effort is made on the part of the appellant to meet the allegation of negligence arising out of the allegation that the right-of-way was permitted to grow up and become covered with dry tinder or other inflammable substances. Indeed, the description of the place of the origin of the fire, the rapidity with which it moved after being set out is, perhaps, conclusive evidence that the inflammable substances covered the entire area in question. Such a condition has been discussed in an opinion by this court in the case of *St. Louis Iron Mt. & S. Ry. Co.* v. *Coombs,* 76 Ark. 132, 88 S. W. 595, 6 Ann. Cas. 151. The court there said that, under such conditions a *prima facie* case is made for plaintiff, and that it then devolves upon the railroad company to exonorate itself. ''The jury having found upon legally sufficient evidence that the fire was communicated by sparks escaping from the engine, the next inquiry presented is whether appellant overcame the presumption of negligence arising therefrom. The engineer and yardwatchman and the regular fireman, testified that they examined the engine immediately after the fire, and found the spark arrester in good condition. Three days later the engine was examined at Newport by an expert from the shops of appellant at Baring Cross, who testified that the spark arrester was of the most approved pattern in use, and was then in good condition. Mr. Luttrell, the superintendent of locomotives of appellant company, testified that the kind of spark arrester on the engine in question was the most approved in practical use, and that, he said: 'I do not think it possible for sparks from any engine equipped like this to set fire to hay from a spark falling 35 or 40 feet.' The engineer testified, also, to the effect that an engine equipped with that kind of spark arrester would not, unless there was some defect or break in it, throw sparks large enough to set fire to anything. There was no testimony on the part of appellant

as to the manner in which the engine was being operated when it passed the building, as the witnesses introduced denied that they passed down by the compress at all.''

Further discussion of the alleged negligence to make out a *prima facie* case arising out of negligence is not necessary and would only extend this opinion without increasing the benefits.

We now come to the most serious question that has been presented upon this appeal, and we must confess it has given us great concern. By way of approach to the discussion of that important proposition we think it should be recognized that it is not every case of negligence that gives rise to a cause of action. It is argued in this case, as has been stated by many of the decisions, that ''it is well settled that a liability cannot attach to any one for a negligent act. It must be the proximate cause of the resulting injury, and one which, in the light of attendant circumstances, a person of ordinary foresight and prudence could have anticipated.'' *Mo. Pac. Rd. Co.* v. *Benham,* 192 Ark. 35, 89 S. W. 2d 928. This announcement by this court was by no means new. It was so held in the case of *Arkansas Valley Trust Co.* v. *McIlroy,* 97 Ark. 160, 133 S. W. 816, 31 L. R. A., N. S. 1020; *St. Louis I. M. & So. Ry. Co.* v. *Bragg,* 69 Ark. 402, 64 S. W. 266, 86 Am. St. Rep. 206; *Gage* v. *Harvey,* 66 Ark. 68, 48 S. W. 898, 43 L. R. A. 143, 74 Am. St. Rep. 70.

There is also cited and relied upon an opinion written by the late Mr. Justice CARDOZO. *Helen Palsgraf* v. *Long Island R. R. Co.,* 248 N. Y. 339, 162 N. E. 99, 59 A. L. R. 1253. Mr. Cardozo was Chief Justice of that court at the time the opinion was written. While his celebrated opinion as presented and interpreted by counsel for appellants apparently does not support the rule as determined by our court, we think it may be said that there was in it at least a recognition that the announcements made were not all inclusive, for he said: ''The law of causation, remote or proximate, is thus foreign to the case before us. The question of liability is always anterior to the question of the measure of the consequences that go with liability. If there is no tort to be redressed,

there is no occasion to consider what damage might be recovered if there were a finding of a tort. Me may assume, without deciding, that negligence, not at large or in the abstract, but in relation to the plaintiff, would entail liability for any and all consequences however novel or extraordinary." This learned jurist cites many authorities in support of the announcement. We do not think that our conclusions which we will now proceed to state impair to any extent the rule announced in the cited authorities and these decisions must be considered as a presentation and discussion of the particular facts present in the several cases cited.

The announcement of a general principle, however sound, if extended and pursued to its ultimate conclusion may prove ridiculous. An example may not be amiss as an illustration of the point, and we will offer it in place of argument. If we should hold in following the rule that one to be held liable for an alleged negligent act, such act must be the proximate cause of the injury and also be of such a nature that the consequent injury must be one a person of ordinary foresight and prudence would have anticipated, and unless the particular injury suffered could have been so anticipated there is no liability. Such an application of a sound rule destroys liability for negligence. It would be a rare case, indeed in which any ordinary mortal might possess such foresight or power of anticipation that he could in the exercise of such power know or foresee the exact injury, or effect that would come from any form of negligence. No such foresight has ever been possessed by modern man, nor is any such required in the matter of negligence to anticipate the exact injury or nature of it to establish or fix liability as a result thereof.

The late Mr. Justice KIRBY had this very matter under consideration when he wrote the opinion in the case of *Helena Gas Co.* v. *Rogers,* 104 Ark. 59, 147 S. W. 473. In order not to extend unduly this opinion we prefer to adopt the language of Justice KIRBY in the cited opinion, calling attention to that portion of comment wherein he said, ". . . if the act or omission is one which

the party ought, in the exercise of ordinary care, to have anticipated as likely to result in injury to others, then he is liable for any injury proximately resulting therefrom, although he might not have foreseen the particular injury which did happen." The authorities are there cited which support the conclusions set out. This opinion announced without a dissenting voice has never, in that respect, been overruled or modified. We announce it again as a sound conclusion. We think Chief Justice CARDOZO must have had in mind a like situation in the final sentence of the foregoing copied statement from his opinion.

This conclusion does not settle the controversy that has been presented upon this appeal as there is one matter still open to debate arising out of the facts peculiar to this case. It is argued by appellant, and we think we may say it is admitted by appellee that if Mrs. Johnson had not been suffering at the time from tuberculosis the smoke and fumes which covered and filled her little cottage would have done her no substantial harm, and it is suggested and vigorously presented that although the appellant might have anticipated damage arising from the negligent starting of the fire there never could have been that degree of anticipatory vision to enable the agents of the appellant to suspect the helplessness of the sufferer as depicted in this case. We agree with the theory in the completeness of the detail presented, but not with the conclusions appellants insist arise therefrom. The right to recover does not arise out of the helplessness of Mrs. Johnson, nor does that stand in the place of apparent negligence. If it be admitted that appellant should have anticipated that there were homes or residences in the community the conclusion is inevitable that there must have been people living in them, and there might be not only the helplessness of infancy and age, but of possible illness, or that able-bodied persons might be trapped in a burning building or even in the fire racing through the burning grass. So, as suggested by Chief Justice CARDOZO, this negligence was "not at large or in the abstract," or as suggested by ap-

pellant "in the air," but it was negligence affecting property or persons when the fire was permitted to spread to a locality wherein property or human beings might reasonably be anticipated to be and might suffer by reason thereof.

Perhaps many other pertinent authorities relating to the particular issues presented might be set forth and discussed, but we are inclined to think that such discussion would prove burdensome rather than beneficial, and we believe the conclusions above stated are supported by reasonable announcement and interpretation of the principles involved.

This conclusion as above set forth also determines the issue as to instructions criticized upon this appeal. We, therefore, hold the case is without any substantial error. Judgment affirmed.