Kansas City So. Rly. Co. v. Beaty

5-3467                                            388 S. W. 2d 79

Opinion Delivered March 22, 1965.

---

*Hardin, Barton, Hardin & Jesson,* for appellant;

*Rober Shaw & Nabors Shaw, Donald Poe,* for appellee.

Ed. F. McFaddin, Associate Justice. Six cases against the appellant were consolidated in the Trial Court; and from jury verdicts and judgments in favor of the plaintiffs, there is this appeal. The entire litigation stems from a forest fire which occurred in late October 1963 and caused considerable damage to forest lands and destruction of personal property. The plaintiffs alleged that the fire was caused by a locomotive negligently operated by appellant; that because of appellant's negligence in allowing rank vegetation the fire quickly spread from the railroad right-of-way to adjacent lands and inflicted the damages which the plaintiffs sought to recover. On appeal, appellant urges three points:

"I. The trial court erred in refusing to grant appellant a directed verdict and in refusing to give appellant's requested preemptory instruction No. 2.

"II. The trial court erred in giving court's Instruction 7-A over the objection of appellant.

"III. The damages awarded by the jury on the Grady Beaty, Houston Beaty, Finkenbinder and Denniston tracts are excessive and are not supported by substantial evidence and the court should order a remittitur as to them."

1.

Appellant's first assignment necessitates a discussion of the governing law as well as the sufficiency of the evidence. We will commence with the law, as this is the first time we have considered Act 320 of 1955.

Our reports contain numerous cases wherein a landowner has sought damages against a railroad company for fire caused by sparks from the locomotive. Long prior to 1907 we had such cases, some of them being *St. L.I.M. & S. v. Coombs* (decided in 1905), 76 Ark. 132, 88 S.W.

595; and *Tilley v. St. L.S.F. Ry.* (decided in 1887), 49 Ark. 535, 6 S.W. 8. In all such cases, prior to 1907, the plaintiff suing the railway for damages was required to both allege and prove negligence on the part of the railroad company as the proximate cause of the fire. But the 1907 Legislature adopted Act No. 141 of 1907, which relieved the plaintiff from proving negligence. This Act No. 141 of 1907 became §8569 of Crawford & Moses' Digest, §11147 of Pope's Digest, and Ark. Stat. Ann. §73-1014 (1947). Under the 1907 Act a plaintiff seeking to recover damages was required to show that the fire was caused by the railroad company, but was not required to show that the railroad company was negligent in causing the fire. Some such cases so holding are: *St. L. S.F. Ry. Co. v. Shore,* 89 Ark. 418, 117 S.W. 515; *Evins v. St. L. S.F. Ry. Co.,* 104 Ark. 79, 147 S.W. 452; *Cairo etc. Ry. Co. v. Brooks,* 112 Ark. 298, 166 S.W.; and *Mo. Pac. v Fowler,* 183 Ark. 86, 34 S.W. 2d 1071.

The statutory law continued unchanged on this point from 1907 until 1955. Then came Act No. 320 of 1955 which expressly repealed the Act No. 141 of 1907 and substituted [1] the language, as now found in Ark. Stat. Ann. §73-1015 (Repl. 1957). The effect of the 1955 Act is to require the plaintiffs in cases such as the present ones to prove that the railroad company was guilty of *negligence.* Thus, the law on this matter applicable today is just as it was before Act No. 141 of 1907. With that point understood, cases decided before the 1907 Act provide the applicable rules now governing; and from the cases decided before 1907 we point to *St. L., I.M. & S. Ry. v. Coombs,* 76

---

[1] Here is the germane portion of Act No. 320 of 1955: "All corporations, companies or persons, engaged in operating any railroad wholly or partly in this State, shall be liable for the destruction of, or injury to, any property, real or personal, which may be caused by fire resulting from the negligence of such corporation, companies or persons, or resulting from the negligent operation of any locomative, engine, machinery, train, car, or other thing used upon said railroad, or which may result from, or be caused by the negligence of any employee, agent, or servant of such corporation, company or person in the discharge of his duty as such upon or in the operation of such railroad; and the owner of any such property, real or personal, which may be destroyed or injured in the manner set forth hereinabove may recover all such damage to said property by suit in any court, in the county where the damage occurred, having jurisdiction of the amount of such damage."

Ark. 132, 88 S.W. 595, and *Tilley* v. *St. L. S.F. Ry.,* 49 Ark. 535, 6 S.W. 6. In the Coombs case we said:

> "In order for the railroad company to be held liable for the damage, the fire must have been communicated by sparks from the engine, and the escape of the sparks must have resulted from negligence on the part of the company or its servants, either in the construction or operation of the engine. This Court held that, from proof that an engine passed near inflammable material immediately before the discovery of fire, there being no evidence to explain its origin, the jury may infer that the fire originated from sparks from the engine. *Railway Company* v. *Dodd,* 59 Ark. 317. In that case the court said: 'The cotton was liable to take fire from these trains, and communicate it to the depot. One of them passed ten or fifteen minutes before it was destroyed. The cotton caught fire, and the depot was consumed by it. These were facts from which the jury might have inferred that the fire originated in sparks from the engine of the train which had just passed, there being no evidence to explain its origin upon any other theory. All these facts tended to show that the property of appellees was destroyed through the negligence of appellant, and are sufficient to sustain the verdict of the jury in this court.' This enunciation is in line with many adjudged cases on the subject."

An interesting case is *Mo. Pac. Ry. Co.* v. *Johnson,* 198 Ark. 1134, 133 S.W. 2d 33. Even though this case was decided in 1939, nevertheless the plaintiff could not claim any advantage of Act No. 141 of 1907 and the case was tried under the law as it existed before 1907. In *Mo. Pac.* v. *Johnson* we quoted from an earlier case:

> " 'Where fire is discovered shortly after a train has passed, and the proof does not establish some other origin of the fire, the jury is justified in finding that fire originated from sparks from the engine . . . There is thus made a case of *prima facie* negligence, not rebutted by other evidence to the effect only that the spark arresters were in good condition . . .'"

With the law thus stated and understood, we turn to the facts in the appeal now before us to ascertain whether the appellant was entitled to an instructed verdict on the claim that the plaintiffs had failed to show the railroad company and its employees were guilty of negligence. It was shown that the appellant's passenger train had to go over a steep grade in going from Mena, Arkansas, to Heavener, Oklahoma; that the crest of the grade was the Rich Mountain crossing; that the train passed the Rich Mountain crossing at about 11:45 A. M. on October 30, 1963; that three men who worked for the Forestry Service had been up on Black Fork Mountain putting out a small fire and had returned to the Rich Mountain crossing; that another witness, Mr. Stites, was also at the crossing; that two of the foresters were on one side of the railroad right-of-way and Mr. Stites and the other forester were on the other side; and that immediately after the train passed the Rich Mountain crossing these men observed two fires on the right-of-way about 100 yards toward Mena on the side where the train had been going upgrade. One of the Forestry Rangers at the Rich Mountain crossing was Basil D. Barr, and he testified that after the fire had been brought under control he went back to the place where he had seen the fire start on the railroad right-of-way:

"Q. What did you observe or what did you find along the railroad there to call your particular attention to?

"A. I found various particles which appeared to be carbon.

"Q. Had you had previous occasions to know what burnt carbon is?

"A. Yes.

"Q. And you say you found particles of substances that appeared to be burnt carbon?

"A. Yes, sir.

"Q. Where did you find those particles?

"A. At the site where these two fires occurred that we put out."

It was shown that there had been a long drought; that the railroad had cut some of the vegetation and left it on the right-of-way uncollected, and that some of the dry vegetation was still standing and was as much as four feet high. There was an extremely strong wind. The two fires observed on the right-of-way, as previously mentioned, spread so rapidly that Mr. Stites and the three forestry men were unable to stop the fires which went for miles. It was 72 hours before the fires were controlled and in that period of time the fires burned the property of these appellees. Besides Mr. Stites and the three forestry men, all of whom testified, there were two other disinterested witnesses: Mrs. Gilbert, who lived near the right-of-way of the railroad company, about a mile from the Rich Mountain crossing; and Mrs. Davis, who lived 100 yards from the south side of the railroad. Both of these witnesses testified that before the train passed there had been no one on the right-of-way and no evidence of fire; and that as soon as the train passed each witness observed the fires. Testimony offered by the plaintiffs made a *prima facie* case of negligence within the purview of our holdings prior to 1907, and the burden then shifted to the railroad company to prove itself free of negligence. The railroad company offered no evidence whatsoever on this issue of negligence. We hold that the Trial Court was correct in denying the defendant's motion for an instructed verdict.

## II.

Appellant's second point relates to Instruction No. 7-A which the Court gave, and which reads:

"If you find by a preponderance of the evidence that the defendant railroad company or its employees, while acting in line and discharge of their duties, carelessly and negligently allowed or permitted sparks or fire to escape from its engine or train setting fire to its right-of-way, or carelessly and negligently allowed or permitted its right-of-way to become vegetated or covered

with easily inflammable or combustible matters and that this coupled with the operation of their train, caused a fire to start, and further, that as a proximate cause of such negligence, if any, a fire was created which burned the respective plaintiffs' properties, then your verdict should be for the plaintiffs.''

The objection that the appellant offered to the said instruction was:

"With reference to Instruction No. 7-A, we submit that the instruction is erroneous since it would allow the jury to find negligence upon the part of the defendant for allowing any vegetation to grow upon the right-of-way as we understand that would not be sufficient upon which to base a verdict; that there is no evidence to support the instruction; that the plaintiff did not introduce evidence to show any negligence upon the part of the defendant, consequently it is abstract and it is binding.''

We hold that the appellant's point is without merit. This instruction is in line with the holdings in our cases prior to 1907, as previously mentioned. See *Mo. Pac.* v. *Johnson,* 198 Ark. 1134, 133 S.W. 2d 33, decided under the law prior to 1907.

In 18 A.L.R. 2d 1081, there is an annotation entitled: "Liability of one on whose property accidental fire originates for damages from spread thereof"; and on Page 1090 of that annotation, cases from various jurisdictions are cited to sustain this statement:

"Where a railroad company fails to use due care to keep its right-of-way free from combustible material, and a fire is started thereon by sparks from a locomotive, the company is liable for the damages sustained by the fire spreading to other property, although there is no negligence in equipping and operating the locomotive.''

## III.

The appellant's third point relates to the amount of the damages. There were six actions consolidated against

the railway company for the fire damage, and a verdict was rendered for the plaintiff in each action. One of these verdicts was in favor of Messrs. Shores, *et al.,* for the destruction of personal property, and there is no claim that this verdict is excessive. Another of the verdicts was in favor of Mrs. Blalock for the destruction of the timber growing on her lands, and there is no claim that this verdict is excessive. But in the other four cases, the appellant claims the verdict and judgment in each case is grossly excessive and asks for a remittitur.

The Court instructed the jury on the correct measure of damages in the following instruction:

"If you find for the plaintiffs on the question of liability you must then fix the amount which will reasonably and fairly compensate them for the following elements of damage proven by the evidence to have resulted from the negligence of the defendant. "As to the landowners: The difference in the fair market value immediately before and immediately after the fire . . .

"Whether any of these elements of damage has been proved by the evidence is for you to determine."

It would unduly prolong this Opinion and serve no useful purpose for us to detail the amount of the judgments, how the evidence bore on each element of damage, and the various other matters that are urged by the appellant and resisted by the appellees. It is sufficient to say that we have carefully considered the evidence and had the benefit of oral argument of learned counsel for each side in this Court; and we have concluded that the appellant's claim for remittiturs should be denied. It therefore follows that the judgments are in all things affirmed.