HOBBS WESTERN TIE COMPANY v. ORAHOOD.

5-1567                                    315 S. W. 2d 930

Opinion delivered June 16, 1958.

[Rehearing denied September 29, 1958.]

*Gentry & Gentry* and *Herrn Northcutt,* for appellant.

*Green & Green, West Plains, Mo.,* and *Oscar E. Ellis,* for appellee.

SAM ROBINSON, Associate Justice. This is a personal injury case. Plaintiff, Othel Orahood, appellee, obtained a judgment in the sum of $4,500 as damages for personal injuries sustained when she was struck by a crosstie which fell on her from a truck that was being unloaded. Appellants contend there was no substantial evidence to sustain the verdict, and that an admission said to have been made by one of the defendants to the plaintiff was inadmissible in evidence.

The defendant Hobbs Western Tie Company is in the railroad crosstie business and has places of business in several localities, one of which is at Mammoth Spring. The Mammoth Spring operation was in charge of Lester Quarles, an employee of Hobbs Western. About 4:00 p. m. on June 16, 1956, Herschel Abney brought a truck load of ties to Hobbs Western's place at Mammoth Spring for the purpose of selling them. Mr. Quarles agreed to buy the ties, and instructed Abney where to place his truck for the purpose of unloading them. The spot where Quarles instructed Abney to place his truck for unloading purposes was partly on the public road and partly on the private property of Hobbs Western. Appellee, Mrs. Orahood, worked for a chicken processing plant and was on her way home, walking on the side of the public road opposite the side where the truck was parked. Just as she was passing the truck, one of the crossties from the truck struck her about the legs, causing serious injury. Appellants contend that the agent of Hobbs Western, Quarles, who was present, had no control over unloading the truck — that he was merely inspecting the ties; but it is admitted that Quarles, as agent for Hobbs Western, instructed Abney to place the truck partly on the public road to unload it.

Negligence is the doing of that which an ordinarily prudent person would not do under the circumstances, or the failure to do that which an ordinarily prudent

person would do under the circumstances. It was a question for the jury to determine whether it was negligence for Quarles to have the truck placed partly on the public road to be unloaded. It is a matter of common knowledge that railroad crossties are very heavy timbers. Whether Quarles should have anticipated that the very thing that did happen might happen was a question for the jury.

There is no showing as to what caused the tie to be propelled from the truck and strike Mrs. Orahood, except the testimony of Jim Romine, who was assisting in unloading the ties, and he testified:

"Q. After the truck was s t o p p e d where Mr. Quarles directed you, who actually unloaded the ties?

A. I did.

Q. Did you push the ties off the truck on to the ground?

A. Yes."

To sustain their position, appellants cite *Leonard* v. *Standard Lbr. Co.,* 196 Ark. 800, 120 S. W. 2d 5. There it was held that the owner of a mill was not liable for injuries received by a person when struck by lumber from a truck when the lumber was being unloaded on the mill property and the mill owner had no control over the person unloading the lumber. There is quite a distinction between that case and the case at bar. In the *Leonard* case the lumber was being unloaded on the private property of the mill owner. There was no question of the public road being used as a place to unload the lumber. Appellants also cite *Willoughby* v. *Hot Springs Ice Co.,* 180 Ark. 231, 21 S. W. 2d 168. This case is hardly in point. One customer of an ice company negligently and carelessly ran into and killed another customer of the ice company on the ice company's property. A public street or road was not involved. This Court quoted with approval from the case of *Manning* v. *Sherman,* 110 Me. 332, 86 A. 245, 46 L.R.A.N.S. 126, as follows: ". . . The fact that the negligent act which caused the injury was done on a per-

son's land or property will not render him liable, where he had no control over the persons committing such act, and the act was not committed on his account . . ."

In the case at bar appellants were responsible for the heavy crossties being unloaded from the truck while it was parked partly on the public road. The agent for the appellant Hobbs Western instructed the driver of the truck to stop the truck at that place to unload it, and he knew pedestrians customarily walked along that road. It was a question for the jury to say whether this action of the agent, Quarles, constituted negligence. In the case of *Blakely & Son* v. *Jones,* 186 Ark. 1169, 57 S. W. 2d 1032, we said: "In determining what is or is not negligence in any given case, the test is always what in the light of all the circumstances and in situations similar to that of the person under inquiry, one of ordinary prudence would or would not do, and where men of ordinary intelligence might differ in their honest judgment, the question of negligence is one for the jury." And in 65 C. J. S. 592, it is said: "A person responsible for a place, agency, instrumentality, or operation which is dangerous and likely to cause injury or damage to persons or property rightfully in its proximity is charged with the duty of taking due and suitable precautions to avoid injury or damage to such persons or property. . . . A person responsible for a dangerous place or instrumentality must guard, cover, or protect it for the safety of persons or animals rightfully at or near it, and his failure to do so is negligence. . . ."

When human life is at stake, the rule of due care and diligence requires that, without regard to difficulties or expense, every precaution must be taken reasonably to assure the safety of any persons lawfully coming into immediate proximity of a dangerous agency or device. *Been* v. *Lummus Co.,* 173 P. 2d 34, 76 Cal. App. 2d 288.

Mrs. Orahood testified that subsequent to the time she received the injuries Mr. Quarles, one of the defendants in the case, told her "We are to blame and I hope you get a reasonable settlement." This testimony

was given over the general objection of the defendants, but the court was not asked to instruct the jury that the statement should be considered only as a g a i n s t Quarles, who had made the statement. This was an admission on the part of Quarles and was clearly admissible against him. No doubt if the request had been made the trial court would have told the jury not to consider the statement as against Hobbs Western. "The admissions of a party made directly by him, . . . relative to the subject matter of a suit are received as original evidence against such party, where inconsistent with the claim which he asserts in the action, whether he is the plaintiff or the defendant." 20 Am. Jur. 460.

Affirmed.

HARRIS, C. J., and GEORGE ROSE SMITH, J., dissent.

CARLETON HARRIS, Chief Justice, dissenting. In my opinion, the Court should have directed a verdict for the defendant, Hobbs Western Tie Company. Bouvier's Law Dictionary defines negligence as:

"The omission to do something which a reasonable man, guided by those considerations which ordinarily regulate the conduct of human affairs, would do, or the doing something which a prudent and reasonable man would not do.

\* \* \*

Such an omission by a reasonable person, to use that degree of care, diligence, and skill which it was his legal duty to use for the protection of another person from injury as, in a natural and continuous sequence, causes unintended injury to the latter.

\* \* \*

Negligence, in its civil relation, is such an inadvertent imperfection, by a r e s p o n s i b l e h u m a n agent, in the discharge of a legal duty, as immediately produces, in an ordinary and natural sequence, a damage to another."

I am unable to see that the injury which occurred to Mrs. Orahood was one that Lester Quarles, foreman for

Hobbs Western, could reasonably foresee to be a result of his directing the truck to be parked in a manner in which it partly protruded into the road. Let it be borne in mind that the parking of the truck is not what occasioned the injury. The injury was caused by a tie falling from the vehicle, and the placing of the truck in that location was not the proximate cause of the accident; it might be otherwise if a vehicle, traveling the road, had struck the truck, which protruded into the highway. In other words, at the time of directing the location for the parking of the truck, Quarles reasonably could not foresee that those in charge of the truck would permit a tie to fall off at the same time a pedestrian walked by—and that such pedestrian would be walking close enough to the truck to be struck. The record shows that this manner of unloading had been used for a long period of time, apparently without mishap to anyone.

I cannot agree that Quarles was guilty of negligence. As stated in American Jurisprudence, Vol. 25, Sec. 307:

> "One of the uses, and the temporary obstruction incident thereto, to which streets, roads, and sidewalks are lawfully subject as of necessity is the loading or unloading of goods in the course of the transportation or delivery thereof to or from the abutting premises, including, as incidental thereto, the right to deposit such goods temporarily in the street or road, or on the sidewalk."

In the next place, I consider this case to be controlled by our decision in *Leonard* v. *Standard Lumber Company*, 196 Ark. 800, 120 S. W. 2d 5. In that case, Leonard drove his truck onto the premises of Standard Lumber Company, and stopped at a point designated by Standard's agent, in order to unload the lumber. Another truck, driven by one Johnson, with a load of lumber, entered the driveway, and parked opposite from the first truck, also for the purpose of unloading. When Leonard finished unloading, he went to the rear and pulled the standard from the cup, to place it in a box,

used for that purpose, to prevent losing it when moving while empty. While removing the standard, with his back to the second truck, the lumber fell from the latter, struck appellant, and severely injured him. The lower court gave an instructed verdict for the Standard Lumber Company, and Leonard appealed, contending that a jury question was made by the testimony. This Court said:

> "* * * The undisputed proof shows that appellee's agent *did not exercise any control over the manner of the unloading of the trucks by the truck drivers, but only directed that the lumber be stacked orderly on the platform after it was taken from the truck, and where it should be stacked.*[1] There is no evidence that appellee's agent knew anything about the condition of Johnson's truck and the placing of Johnson's truck in close proximity to that of appellant was as observable to appellant as it was to appellee's agent. Even if appellee's agent had known of the defective condition of Johnson's truck, it could not change the situation for neither Johnson nor appellant were employees of appellee, and no relationship existed that would authorize the application of the doctrine of *respondeat superior*.

> * * *

> 'When the injury is the result solely of the negligent act of a third person, who does not stand in such a relation to the defendant as to render the doctrine of *respondeat superior* applicable, no liability attaches to defendant.' * * *'"

Here, Quarles had nothing to do with the unloading, but only graded the ties after they were removed by the truck driver and his assistant from the vehicle. I find no Arkansas case which holds this to be sufficient control to constitute liability. Let us say that a home owner purchases a load of dirt for the purpose of filling in his yard. The truck arrives, and the home owner points out the spot in the yard, near the street, where he desires the dirt to be placed, and tells the driver to park his truck

---

[1] Emphasis supplied.

at the edge of the yard, (still in the street) from which point the dirt can be unloaded in the desired location. This is done, and a pedestrian, using the street, walks by. The truck driver, in negligently unloading the dirt, permits part to fall on the pedestrian and injure him. According to my interpretation of the holding of the majority, this act of directing the driver to stop at the place most convenient for unloading the dirt, would render the home owner liable. I would conclude that hereafter, people who desire to fill in their yards, had best permit the heavy, loaded truck to be driven onto the premises. (This probably would require another load of dirt to fill in where the truck had been parked.) For that matter, if the home owner directs the truck driver to park in his yard, and an injury occurs, he may well be liable under the opinion of the majority, for under the principle enumerated therein, in telling the driver where to park, the truck is placed under his control.

Appellant, Hobbs Western, moved for an instructed verdict, and under the above reasoning, I feel it was entitled to same. Certainly it was not bound by the statement made by Mr. Quarles, mentioned in the majority opinion. This statement was made one year after the accident occurred, and after Quarles had ceased working for Hobbs Western. In addition, it was only an opinion, stating no facts upon which it was based, and I consider it inadmissible, as to the company.

For the reasons herein enumerated, I respectfully dissent. Justice GEORGE ROSE SMITH joins in this dissent.