NOBLE MCCHRISTIAN, ET AL V. TOMMY HOOTEN, ET AL

5-4771                                    436 S.W. 2d 844

Opinion Delivered January 27, 1969
[Rehearing denied March 3, 1969.]

*Dobbs, Pryor & Shaver* for appellants.

*Hardin, Barton, Hardin & Jesson* for appellees.

J. Fred Jones, Justice. Tommy, Rhoda and Michael Hooten filed suit in the Sebastian County Circuit Court against Joseph R. Marlow and Noble McChristian for personal injuries and property damages sustained as a result of an automobile collision in Madison County, Arkansas. McChristian cross-complained against Marlow for contribution as a joint tort feasor, and Marlow cross-complained against McChristian for his property damage. Tommy Hooten alleged damages in the amount of $35,000.00 for personal injuries and $3,500.00 for property damages to his automobile.

A jury trial resulted in a verdict against McChristian for $40,000.00 in favor of Tommy Hooten; for $1,200.00 in favor of Rhoda Hooten and for $118.00 in favor of Michael Hooten. Tommy Hooten only proved $1,400.00 damage to his automobile, so upon a voluntary remittitur of $3,600.00, judgment was entered in his favor for $36,400.00. Judgment was entered on the verdict for Rhoda and Michael Hooten. McChristian has appealed and relies on the following points for reversal:

"The court should have granted the request for a directed verdict.

Only eight jurors found McChristian liable for all of the $40,000.00 verdict, and the answers to the interrogatories are inconsistent and conflicting.

The verdict is excessive and the result of passion and prejudice, and a new trial should have been granted."

The record reveals that on February 12, 1967, Tommy, Rhoda and Michael Hooten were riding in an automobile belonging to Tommy and being driven by a friend, Jerry Parker. They were traveling west and slightly upgrade on state highway 74 near Huntsville, Arkansas. Marlow was driving his automobile east and downgrade on the same highway, meeting the Hooten automobile. McChristian drove his pickup truck south from a side road into highway 74 and turned east onto the highway between the oncoming Hooten and Marlow automobiles. In an effort to avoid colliding with the McChristian vehicle, the Marlow vehicle skidded approximately 462 feet from the crest of a hill, went off the pavement into the gravel on the south side of the highway behind the McChristian vehicle. It then cut back across the south side of the highway immediately behind the McChristian vehicle; went around the McChristian vehicle, and collided head-on with the Hooten automobile on the north side of the highway a few feet east, and in front of, the McChristian vehicle.

The testimony is in conflict as to whether the McChristian vehicle stopped before entering the highway and whether it had completely cleared the north side of the highway and had completely straightened out on its south and proper side of the highway when the collision occurred. McChristian testified that he stopped his vehicle and looked both ways before entering the highway and that he saw no vehicle approaching from either direction. He testified that he had completely crossed the north side of the highway and had turned his vehicle straight into the south lane and his proper side of the highway when the collision occurred. Marlow and the driver of the Hooten automobile testified that they saw McChristian drive slowly from the side road out into the highway between the two oncoming automobiles and that they did not see him stop before entering the highway. They testified that the left rear wheel of his pickup was about on the center line of the highway when the collision occurred.

The case was submitted to the jury upon interrogatories signed by jurors as follows:

"1. Do you find from a preponderance of the evidence that James Marlow was guilty of negligence which was a proximate cause of the occurrence?

Answer: *No*  (yes or no)

/s/  Mrs. N. D. Lawrence

/s/  Mrs. Phil Hatcher

/s/  Mrs. L. Hobbs

/s/  Mrs. E. G. Dooley

/s/  Floyd E. Evans

/s/  Mrs. Leland Duncan

/s/  Dale Moore

/s/  Harley A. Wilson

/s/  Robert L. Taylor

2. Do you find from a preponderance of the evidence that Noble McChristian was guilty of negligence which was a proximate cause of the occurrence?

Answer: *Yes*  (yes or no)

/s/  Mrs. N. D. Lawrence

/s/  Mrs. Phil Hatcher

/s/  Mrs. L. Hobbs

/s/  Mrs. E. G. Dooley

/s/  Floyd E. Evans

/s/  Mrs. Leland Duncan

/s/ Luther H. Hodges

/s/ Dale Moore

/s/ E. V. Swift

/s/ Harley A. Wilson

/s/ Robert L. Taylor

3. If you have answered 'yes' to either interrogatory 1 or 2 then answer this interrogatory:

Using 100% to represent the total responsibility for the occurrence and any injuries or damages resulting from it, apportion the responsibility between Mr. Marlow and Mr. McChristian.

Answer: *Mr. Joseph R. Marlow*      %

         *Mr. Noble McChristian*     *100%*

/s/ Mrs. N. D. Lawrence

/s/ Mrs. Phil Hatcher

/s/ Mrs. L. Hobbs

/s/ Mrs. E. G. Dooley

/s/ Floyd E. Evans

/s/ Mrs. Leland Duncan

/s/ Dale Moore

/s/ Harley A. Wilson

/s/ Robert L. Taylor

4. State the amount of any damages which you find from a preponderance if the evidence were sustained by Tommy Hooten.

Answer: $40,000.00

/s/ Mrs. N. D. Lawrence

/s/   Mrs. Phil Hatcher

/s/   Mrs. L. Hobbs

/s/   Mrs. E. G. Dooley

/s/   Mrs. Leland Duncan

/s/   Luther H. Hodges

/s/   Dale Moore

/s/   E. V. Swift

/s/   Harley A. Wilson

/s/   Robert L. Taylor

5. State the amount of any damages which you find from a preponderance if the evidence were sustained by Rhoda Hooten.

Answer:   $1,200.00

/s/   Robert L. Taylor
Foreman

6. State the amount of damages which you find from a preponderance if the evidence were sustained by Michael Hooten.

Answer:   $118.00

/s/   Robert L. Taylor
Foreman

7. State the amount of any damages which you find from a preponderance if the evidence were sustained by James Marlow.

Answer:   $ NO

/s/   Robert L. Taylor
Foreman''

We now discuss appellants' points in the order designated. The appellants' motion for directed verdict was presented in the form of requested instructions which were denied by the trial court. In passing on assignment of error in refusing to direct a verdict for the defendant in *Hawkins* v. *Missouri Pacific Railroad Company, Thompson, Trustee,* 217 Ark. 42, 228 S.W. 2d 642, this court said:

> "A directed verdict for the defendant is proper only when there is no substantial evidence from which the jurors as reasonable men could possibly find the issues for the plaintiff. In such circumstances the trial judge must give to the plaintiff's evidence its highest probative value, taking into account all reasonable inferences that may sensibly be deduced from it, and may grant the motion only if the evidence viewed in that light would be so insubstantial as to require him to set aside a verdict for the plaintiff should such a verdict be returned by the jury."

And again in *St. Louis, I.M. & S. Ry. Co.* v. *Fuqua,* 114 Ark. 112, 169 S.W. 786, we said:

> "The rule is that where fair-minded men might honestly differ as to the conclusion to be drawn from facts, whether controverted or uncontroverted, the question at issue should go to the jury."

We conclude that the trial court was correct in denying appellants' motion for a directed verdict.

In arguing his second point the appellants would disqualify two of the ten jurors who found that Tommy Hooten's damages amounted to $40,000.00, because these two jurors failed to sign interrogatories 1 and 3 finding Marlow not guilty of negligence and apportioning the negligence all to the appellant McChristian. The appellants cite cases from Wisconsin in support of their contention, but we conclude that the laws of Arkansas make no such distinction.

The Wisconsin constitution, as cited by the appellants, authorizes the legislature to provide "that a valid verdict in civil cases, may be based on the votes of a *specified number of the jury not less than five-sixths thereof.*" (Emphasis supplied.) The legislature of Wisconsin by statute provided "a verdict, finding or answer agreed to by *five-sixth of the jurors* shall be the verdict, finding or answer of the jury." (Emphasis supplied.)

The number of jurors required to return a verdict in Arkansas is fixed by the constitution, Amendment 16 to Art. 2, § 7, which provides:

" ... [I]n all jury trials in civil cases, where as many as nine of the jurors agree upon a verdict, the verdict so agreed upon shall be returned as the verdict of such jury, provided, however, that where a verdict is returned by less than twelve jurors all the jurors consenting to such verdict shall sign the same."

As to special verdicts, Ark. Stat. Ann. § 27-1741.2 (Repl. 1962) provides:

"A court may require a jury in a civil action to return only a special verdict in the form of a special written finding upon each issue of fact."

We shall not attempt a fine distinction between the constitutional provisions and statutory laws of Wisconsin and those of Arkansas for the reason that the difference in the language used makes the distinction obvious; and for the further and primary reason, that we find no conflict between the findings of the jurors under the interrogatories 1, 2, 3 and 4 in this case. Interrogatory No. 4 simply asks for a determination of the damages sustained by Tommy Hooten. It stands alone and is not dependent upon answers to any other interrogatories at all. Certainly there was no conflict, and actually

no connection, in assessing the amount of damages sustained by Hooten in the collision and apportioning the percentage of negligence between the parties causing the collision. There might be considerable damage without negligence in an automobile collision, and there might be considerable negligence without damage. The crux of appellants' argument is that all interrogatories in special verdicts must be signed by the same nine jurors before that part of the verdict becomes legal and binding.

The trial court gave the jury the following instruction:

"Ladies and gentlemen, as you know, this case is being submitted to you on interrogatories, and *you should consider each of these interrogatories as a separate verdict*. If your answer to any interrogatory is unanimous, then only your foreman need sign it. But if nine or more of you agree on a particular answer, then each of you who agrees must sign the answer, and those of you who disagree need not sign. You will understand that in order to answer any interrogatory, at least nine of you must agree. And I feel that I should tell you, you should, of course, take No. 1 and go right straight on through." (Emphasis supplied.)

We are of the opinion that this instruction was proper. We construe "as many as nine of the jurors," as used in constitutional Amendment 16 to Art. 2, § 7, supra, to mean *any nine* of the jurors and not necessarily *the same nine* jurors where more than one issue of fact is presented on special verdict to be returned by the jury. We, therefore, hold that the answer to each interrogatory in special verdicts is to be considered as a separate verdict on that particular issue of fact, and that where as many as any nine of the jurors agree upon the finding as to the particular fact in issue, such agreement constitutes the verdict of the jury on such issue.

As to appellants' third point, the jury returned a verdict for $40,000.00 damages which was properly reduced by a remittitur of $3,600.00 on the motion of appellee, and judgment was entered for $36,400.00. The verdict of the jury was based upon evidence that the appellee Tommy Hooten suffered a skull fracture and was rendered unconscious; that he suffered a severe fragmentation fracture of the head of the left humerus and spent some twenty days in the hospital, the first week of which was in intensive care. There was evidence that the appellee Hooten underwent surgery by open reduction for the repair of the fractured humerus and that he had difficulty sleeping and remained under medication for pain in his arm for approximately two months after leaving the hospital. There is uncontradicted evidence that approximately sixteen weeks following the initial surgery, the appellee was rehospitalized and surgery again performed in order to remove the rod which had been inserted in the humerus during the initial surgery, and that the open reduction surgery resulted in extensive scar tissue which was still draining at the time of trial. The X-ray exhibits clearly show that the head of the humerus was fragmented and displaced. There was medical evidence that there would be permanent partial disability of 15% in the loss of use of appellee's left arm.

Appellee's medical expenditures amounted to $2,636.00, his loss of wages amounted to $2,300.00, and his property damage amounted to $1,400.00. The remainder of the $36,400.00 was necessarily apportioned to pain and suffering, future medical expenses, physical disfigurement, permanent injury and loss of future earning capacity. The appellee was twenty-three years of age at the time of his injury.

As was said in the similar case of *Fred's Dolla' Store* v. *Adams*, 238 Ark. 468, 382 S.W. 2d 592:

"In a case of this kind precedents are of scan: value. No two cases are so nearly identical that

essential points of difference cannot be found. The ultimate question is whether the verdict shocks the conscience of the court or demonstrates that the jurors were motivated by passion or prejudice."

Upon consideration of all the evidence before the jury in this case, we are unable to say that the verdict of the jury, as reduced by the remittitur, was excessive.

The judgment is affirmed.