Glenn JORDAN and Marge WOMACK *v.*
Sara ADAMS and J. W. ADAMS

75-266                              533 S.W. 2d 210

Opinion delivered March 1, 1976

*George K. Reeves* and *Max B. Harrison,* for appellants.

*Gardner & Steinsiek,* for appellees.

ELSIJANE T. ROY, Justice. On May 29, 1973, appellees Sara Adams and J. W. Adams were guests at the Imperial Diners Club, Inc., a private club with a bar located in the Ramada Inn, Blytheville, Arkansas. The bar is operated immediately off the main dining room of the inn and is separated by a semi-private partition.

Prior to the arrival of appellees at the club, appellants Glenn Jordan and Marge Womack were seated at a table in the dining area near the partition dividing it from the bar area. Appellants had been dating for about a year and a half, and Mrs. Womack drove from Caruthersville, Missouri, to the Ramada Inn in Blytheville about once a week to meet Jordan.

According to testimony of others seated nearby agitated and vulgar conversation was heard from appellants' table. Mrs. Womack left the table and went to talk to a man seated at the bar. Jordan followed her and, using profanity, spoke to the man to whom Mrs. Womack was talking.

When Jordan returned to his table he picked up Mrs. Womack's purse and threw it approximately 26 feet toward the bar where Mrs. Womack was standing. The purse landed on a table between appellants, knocking off a glass candle holder, which broke upon impact. The purse then slid off the table and hit the floor. A .25 caliber pistol in the purse discharged, and the bullet struck Sara Adams below the calf of her left leg.

Appellees brought this action for damages, and the jury returned a verdict in favor of Sara Adams in the sum of $20,-000 and for J.W. Adams in the amount of $600. From such verdict appellants lodged this appeal. Appellants first argue that the court erred in overruling their motion for a directed verdict since there was no negligence which would entitle

appellees to recover. We do not agree with this contention. We find that there was substantial evidence of negligence to make a question of fact for the jury as to each appellant.

J. W. Adams testified that he and his wife were guests of John Olson the night of the accident and that after they were seated Tom Miller came over to visit with them. He noticed that Jordan came to the bar and had an agitated conversation with a man talking to Mrs. Womack and then Jordan returned to his table. Then came the crash, after which he noticed Mrs. Womack stoop down, pick up her purse and go out the door. Within seconds he saw blood coming from his wife's leg and initially he thought it was a cut from the glass candle stick, but in reality it was a gunshot wound. Mrs. Adams was admitted to the Chickasawba Hospital and remained there five days; while there she was attended by Dr. Sims and Dr. Jones; the medical expense for the hospitalization, x-rays, doctors' fees, etc. at that time amounted to approximately $446; she continued to go to see Dr. Sims when necessary thereafter. In order to ascertain how far the purse had been thrown after the accident he stepped off the distance from Jordan's table to the bar and found it to be about 26 feet.

Mrs. Adams testified that during the five days she was in the hospital she was given medication for pain; the first night at home was an extremely bad one; and for two weeks after she got home she stayed in bed. The following week when she tried to walk, pursuant to the doctor's instruction, she suffered extreme pain. She lost 21 pounds the first three weeks after the accident.

Prior to the accident she had performed her household duties, did gardening and yard work, rode a bicycle and maintained a walking schedule of three miles almost every day. These activities were curtailed all summer and to the date of trial (about two years after the incident) she still had not been able to resume some of them. Mr. Adams' sister helped take care of her, and she paid a maid to come in twice a week. Even though she has resumed her exercise activity as much as possible she still gets cramps in the calf of her leg and has to get off the leg and take something for pain.

She also testified that just recently one night she felt the length of the bullet under the skin in her leg, and this was confirmed by her husband.

Mrs. Tom Miller testified she and her husband were in the dining area of the Ramada Inn and that coming from a table to their right there was loud conversation with vulgar language, making her feel uncomfortable. The people at the table were later identified as appellants.

Both John M. Olson and Mrs. Miller confirmed other testimony about the purse flying through the air and hitting the bar area. Olson also testified that Jordan was slurring his words and seemed to act like a person who had been drinking.

Dr. Hunter C. Sims testified that he saw Mrs. Adams on May 29, and she had a gunshot wound in the left calf in the bottom part of her leg. X-rays were taken and indicated a missile present from a .25 caliber gun.

He stated an injury of this nature does damage to every tissue it traverses, including blood vessels, nerves, fat, muscle, skin and subcutaneous tissue. The velocity of the bullet and the heat of the bullet both caused damage. He described her hospital treatments for five days and stated she was seen after her discharge because she continued to have some discomfort, swelling and redness in her left calf, all of which was diagnosed as superficial thrombophlebitis or an intervascular clot in her left leg. She was placed on cortisone, but she developed an allergic reaction to this drug. The bullet was not removed from her leg because the size of the object was such that it probably would not move around in the body. However, Dr. Sims also testified that if Mrs. Adams continued to have pain from the projectile in her leg, then the bullet would have to be removed and if she continued to experience difficulty and pain in walking it probably would be related to the gunshot wound.

On appeal we consider only that evidence which is most favorable to appellees in determining if substantial evidence exists.

Nevertheless we note that Jordan himself testified he "tossed" the purse to Mrs. Womack, though her back was to him and he did not know why he did it. He admitted he had been drinking but said he was not staggering; he was not mad but he had a bad habit of cursing. He denied he knew Mrs. Womack had a pistol in her purse, but he did not deny that he had been target shooting with her nor that he had been seeing her once or twice a week for about two years.

Mrs. Marge Womack testified concerning her association with Jordan and arrival at the Ramada Inn on May 29, 1973.

She admitted the purse and pistol belonged to her and that she carried the pistol whenever she went out of town at night, but that she did not have a permit.

She further testified there were two safety devices on the gun but she did not check the gun before she left that night; the last time she had the gun out for the purpose of shooting it was when she was out in the country with Jordan and Mr. DePriest.

Mrs. Womack testified she left the scene that night because she was scared.

Appellants argue Marge Womack could not have foreseen that someone would throw her purse causing the pistol to fire and Jordan, not knowing the pistol was in the purse, could not foresee injury from the act of throwing it.

We do not agree. It is well established that if the act is one which the party in the exercise of ordinary care ought to have anticipated was likely to result in injury to others, then such person is liable for the injury proximately resulting therefrom although he might not have foreseen the particular injury which did happen. *Missouri Pacific Railroad Company* v. *Johnson*, 198 Ark. 1134, 133 S.W. 2d 33 (1939). In *Johnson* the foreseeability rule enunciated in the case of *Helen Palsgraf* v. *Long Island R.R. Co.*, 248 N.Y. 339, 162 N.E. 99 (1928), was discussed by the court as follows:

* * * If we should hold in following the rule that one to be held liable for an alleged negligent act, such act must be the proximate cause of the injury and also be of such a nature that the consequent injury must be one a person of ordinary foresight and prudence would have anticipated, and unless the particular injury suffered could have been so anticipated, there is no liability. Such an application of a sound rule destroys liability for negligence. It would be a rare case, indeed in which any ordinary mortal might possess such foresight or power of anticipation that he could in the exercise or such power know or foresee the exact injury, or effect that would come from any form of negligence. No such foresight has ever been possessed by modern man, nor is any such required in the matter of negligence to anticipate the exact injury or nature of it to establish or fix liability as a result thereof.

In the case at bar the evidence as above detailed is certainly sufficient for the jury to infer that Jordan knew Womack carried a pistol in her purse since, according to her testimony, she always carried it when she went out of town at night. They had been meeting regularly at night for well over a year, and on at least one occasion she had her pistol with her and they went out to target shoot together. However, even if we assume that Jordan was unaware that Womack had a pistol in her purse, it was a culpably negligent act for him to throw a purse (large enough to hold a pistol and other things a woman carries therein) 26 feet across an area where people were dining and drinking. It certainly could have been or reasonably should have been foreseen that the purse might hit someone in the head and/or land on a table breaking glasses or other fragile articles causing serious injury. The throwing of the purse did result in the crash of the glass candle holder which initially was thought to be the cause of Mrs. Adams' injury. Mrs. Adams was certainly within the foreseeable group of persons who might be injured by Jordan's negligence, and it was not necessary that he foresee the exact manner in which the injury would be caused. The *Palsgraf* case, supra, dealt with the "unforseeable plaintiff". Here we do not have such a situation.

Mrs. Womack's bringing, without checking the safety, a loaded pistol in her purse into an establishment where people were drinking intoxicating beverages constituted sufficient evidence of negligence to make a fact question for the jury. Furthermore, a party under such circumstances could reasonably foresee a risk of harm to others.

The case of *Cobb v. Indian Springs, Inc.*, 258 Ark. 9, 522 S.W. 2d 383 (1975), also presents a bizarre set of circumstances. In *Cobb* we held that a directed verdict as to a security guard was improper where there was evidence from which a jury could conclude that the automobile driver was encouraged and incited by the security guard on the premises to demonstrate the speed of the driver's car. The jury could have found the driver engaged in the tortious conduct complained of, and that the security guard also was guilty of negligence, but in his conduct, both becoming tortfeasors who by concurrent acts of negligence, though disconnected, were guilty of acts which were the proximate cause of the injury. The court stated:

> As to foreseeability, it was only necessary that Babbitt [the security guard], at the time the suggestion was made, foresee an appreciable risk of harm to others.

In the case at bar we have the negligent act of Mrs. Womack's carrying the pistol into the establishment in her purse and the negligent act of Jordan's throwing the purse; these acts concurred to proximately cause Sara Adams' injuries.

As to the excessiveness of the verdict, the fact a jury's award is possibly larger than the court would have given is not sufficient to disturb the verdict. The ultimate question is whether the amount shocks the conscience of the court or demonstrates that the jurors were motivated by passion, prejudice or undue influence. *Clark County Lumber Company v. Collins*, 249 Ark. 465, 459 S.W. 2d 800 (1970), and *McChristian v. Hooten*, 245 Ark. 1045, 436 S.W. 2d 844 (1969).

Furthermore, in *Clark County Lumber Company* the court said:

Every case involving the issue of an excessive verdict

must be examined on its own facts; and before this court can constitutionally reduce a verdict we must give the evidence in favor of the verdict its highest probative force and then determine whether there is any substantial evidence to sustain the verdict. *Breitenberg* v. *Parker*, 237 Ark. 261, 372 S.W. 2d 828.

Applying the principles enunciated in the above cited cases to the evidence herein we do not find the verdict as to either of the appellees excessive.

Affirmed.

HARRIS, C.J., and GEORGE ROSE SMITH and FOGLEMAN, JJ., dissent.

JOHN A. FOGLEMAN, Justice, concurring in part, dissenting in part. I concur in the affirmance of the judgment as to Marge Womack. The pistol she carried in her purse was a dangerous instrumentality. See dissenting opinion in *Purtle* v. *Shelton*, 251 Ark. 519, 474 S.W. 2d 123 (per Fogleman, J.) and cases cited therein. See also, *Williams* v. *Davidson,* 241 Ark. 699, 409 S.W. 2d 311. One handling such instrumentalities must take every precaution to reasonably assure the safety of any persons lawfully coming into proximity with it. *Hobbs Western Tie Company* v. *Orahood,* 229 Ark. 241, 315 S.W. 2d 930. See also, *Manning* v. *Jones,* 95 Ark. 359, 129 S.W. 791.

Mrs. Womack's conduct in failing to check the safety on the weapon and in leaving her purse on the floor near the table did not meet that standard, particularly if those at the table were, as might be inferred from some of the testimony, intoxicated and boisterous.

Jordan's liability is quite a different matter. As to him, I join in the dissent of Mr. Justice George Rose Smith.

I am authorized to state that the Chief Justice joins in this opinion.

GEORGE ROSE SMITH, Justice, dissenting. I would reverse as to Jordan, because as I interpret the testimony Jordan had

no reason to foresee the possibility that Mrs. Womack's purse contained a pistol that might go off upon the purse's being thrown across the room. Yet the majority opinion, after saying that "even if we assume that Jordan was unaware that Womack had a pistol in her purse," still imposes liability, simply because the thrown purse might have hit someone in the head or have caused injury by breaking glasses on a table.

Such reasoning is properly criticized by Harper and James in their Law of Torts, § 20.5 (1956): "Courts and writers have from time to time taken the position that if defendants should anticipate that certain conduct is fraught with unreasonable probability of *some* harms to *somebody,* then the duty to refrain from that conduct is owed to anyone who may in fact be hurt by it. As we have seen, this was the view taken in the dissenting opinion of Judge Andrews in *Palsgraf v. Long Island Railroad Co.*"

What the present majority opinion really says is that if Jordan could foresee some danger, then he is liable for any injury that might actually occur, no matter how unforeseeable. It would make no difference if the purse contained a pistol, a vial of poison gas, or an angry rattlesnake. Prosser points out why that view is wrong: "It is here at least that the line must of necessity be drawn to terminate the defendant's responsibility. The courts have exhibited a more or less instinctive feeling that it would be unfair to hold him liable. The virtually unanimous agreement that the liability must be limited to cover only those intervening causes which lie within the scope of the foreseeable risk, or have at least some reasonable connection with it, is based upon a recognition of the fact that the independent causes which may intervene to change the situation created by the defendant are infinite, and that as a practical matter responsibility simply cannot be carried to such lengths." Prosser on Torts, § 44 (4th ed., 1971). I would hold that the discharge of the pistol was an intervening cause for which Jordan is not liable.