585 P.2d 1280

**Arthur TILLMAN, Plaintiff-Appellant,**

**v.**

**Harold E. THOMAS and Martin W. Rust, aka Henry Rust, dba Allison Ranch and Paul Schild, Defendants-Respondents.**

**No. 12437.**

Supreme Court of Idaho.

Oct. 27, 1978.

Michael W. Moore of Imhoff, Lynch & Davis, Boise, for plaintiff-appellant.

Phillip M. Barber of Elam, Burke, Jeppesen, Evans & Boyd, Boise, for defendants-respondents.

BAKES, Justice.

Plaintiff appellant Arthur Tillman sued defendants respondents Harold Thomas and Martin Rust (a partnership doing business as Allison Ranch and hereinafter referred to as Allison) and Allison's employee Paul Schild for personal injuries Tillman sustained on a hunting trip. Responding to separate questions contained in a special verdict form provided by the trial court, a jury found that neither Allison nor Schild was guilty of negligence that proximately caused the accident. Tillman appeals from the resultant judgment, claiming that irregularities in the jury's voting pattern invalidate its verdict. We affirm.

The factual background of this case is relatively simple. Tillman paid Allison to take him on a hunting trip. Allison provided Tillman with a saddle horse and a guide, Paul Schild. Tillman was injured when the horse reared while crossing a boggy area through which the guide Schild had led the hunting party. Tillman sued Allison and its employee, Schild, alleging that their negligence resulted in his injury. Allison admitted that Schild was its employee and that he was acting within the scope of his employment when the accident occurred. Tillman tried the case on the theory that Allison was liable by virtue of its own negligent conduct, and for the negligence of its employee Schild under the doctrine of *respondeat superior.* The trial court instructed the jury that any negligence on Schild's part must be imputed to Allison.

The jury's voting pattern is the heart of the matters tendered for our consideration. The trial court provided the jury with a special verdict form consisting of five separate questions. The first question asked whether the employer Allison was "guilty of negligence which was a proximate cause of the accident," and the second question asked whether the employee Schild was "guilty of negligence which was a proximate cause of the accident." Nine jurors answered "no" to the first question. Eight of those nine, and one other juror who did not concur in the response to the first question, answered "no" to the second question. Juror Leorna M. Cushing was among the nine who found that Allison was not "guilty of negligence which was a proximate cause of the accident," but she did not join in the

parallel finding concerning Schild. The court entered a "Judgment upon Verdict" for Allison and Schild. Relying in part upon the jury's vote distribution, Tillman moved for a new trial, but the district court denied Tillman's motion.

On appeal, Tillman argues that the jury's verdict was invalid because the nine jurors who absolved Allison were not the same nine who exonerated Schild. Tillman further contends that juror Cushing's vote in favor of Allison is fatally defective because she did not also vote in favor of Allison's employee, Schild.

We first consider whether juror Cushing's failure to absolve the employee Schild of negligence impeaches her vote for Allison. Tillman asserts that Cushing's failure to subscribe to the jury's absolution of Schild means she believed that Schild's negligence approximately caused the accident. Therefore, according to Tillman, she was required to hold Allison liable as well under the trial court's *respondeat superior* instruction. However, this argument improperly equates Cushing's failure to exonerate Schild with an affirmative conviction that he was at fault. It is equally possible that Cushing simply formed no opinion respecting Schild's culpability. *See Barlow v. International Harvester Co.*, 95 Idaho 881, 522 P.2d 1102 (1974).

■ We should ascribe to juror Cushing, if possible, that view of the case which makes her responses to the separate inquiries consistent. *Cf. Rohr v. Henderson*, 207 Kan. 123, 483 P.2d 1089 (1971) (court should adopt view of case that makes jury's answers to special interrogatories consistent). *See also Hasson v. Ford Motor Co.*, 19 Cal.3d 530, 138 Cal.Rptr. 705, 564 P.2d 857 (1977). Cushing's failure to vote on the issue of Schild's liability can be reconciled with her vote in favor of Allison under the following circumstances. If Cushing did not decide whether Schild's conduct was blameworthy, and if Cushing's vote in the employer Allison's favor derives from and stands for her finding that, with regard to its *own* conduct, Allison was not "guilty of negligence which was a proximate cause of

the accident," then so characterized, Cushing's voting pattern is internally consistent. Her vote for Allison acquits the employer of causal negligence based upon its own actions but does not address the employer's possible liability under the doctrine of *respondeat superior.* The separate vote of the jury in favor of Schild removes the basis for holding Allison vicariously liable. The two findings are not necessarily inconsistent. *Barlow v. International Harvester Co., supra.*

■ This brings us to Tillman's second argument. He suggests that the verdict rendered was invalid because the nine jurors (including Cushing) who determined that Allison's own behavior was not causally negligent were different from the nine jurors (excluding Cushing) who found that Schild's conduct was not causally negligent. Tillman has argued that the Idaho Rules of Civil Procedure support his position, citing I.R.C.P. 48(a) and 48(b). However, we find the rules equivocal, and we therefore seek guidance elsewhere.

Judicial decisions from other states are divided. Some courts have held that in order to render a verdict, the *same* jurors—together comprising the required majority—must concur in resolving each issue essential to the ultimate outcome of the controversy. *See, e. g., Earl v. Times-Mirror Co.*, 185 Cal. 165, 196 P. 57 (1921); *Baxter v. Tankersley*, 416 S.W.2d 737 (Ky.1967); *Clark v. Strain*, 212 Or. 357, 319 P.2d 940 (1958); *Dick v. Heisler*, 184 Wis. 77, 198 N.W. 734 (1924). Other courts have allowed a majority consisting of different jurors on different issues to make the determinations involved in disposing of a case. *See, e. g., McChristian v. Hooten*, 245 Ark. 1045, 436 S.W.2d 844 (1969); *Ward v. Weekes*, 107 N.J.Super. 351, 258 A.2d 379 (App.Div. 1969); *Naumburg v. Wagner*, 81 N.M. 242, 465 P.2d 521 (App.1970); *Fields v. Volkswagen of America, Inc.*, 555 P.2d 48 (Okl. 1976).

The question is basically one of choosing that result which will best carry out the jury trial policy expressed in Art. 1, § 7, Idaho Constitution, as implemented by I.R.

C.P. 48.[1] In *Naumberg v. Wagner, supra,* the court held that "any ten jurors are . . sufficient to agree on any issue, so long as none of these jurors has voted inconsistently." *Id.* 465 P.2d at 524. The court believed that its holding "best assures attainment of the purpose of less-than-unanimous verdicts, namely, overcoming minor disagreements that resulted in 'hung' juries under the unanimity requirement." *Id.; cf. Ward v. Weekes,* 107 N.J.Super. 351, 258 A.2d 379 (App.Div.1969) (contrary rule frustrates objective of preventing mistrials that cause economic loss to public, litigants, attorneys, and witnesses and contribute to court congestion and unfairness resulting from prolonged delay). By contrast, the rule requiring concurrence of the same nucleus of jurors on each material issue seems to be rooted in the notion that a verdict is a "non-fragmentable totality," "a whole and separate entity [that] represents one ultimate finding on the basis of the several issues." 27 Wash. & Lee.L.Rev. 360, 363–64 (1970). This rule is said to promote consistency and fairness. *Id.* at 371. In our view, consistency and fairness are adequately protected without resorting to such a mechanistic rule that needlessly increases the likelihood of costly mistrials.

The framers of Art. 1, § 7, of the Idaho Constitution, in rejecting the unanimous verdict requirement in favor of a requirement that only three-fourths of a jury in a civil matter be required to return a verdict, were motivated primarily by the practical considerations of the additional expense and delay resulting from failure of juries to agree unanimously, and by the further belief that justice would not be diluted as a result of a three-fourths requirement. One of the convention members who supported the proposed section stated:

"[M]y experience has taught me that justice would be meted out more unerringly, more promptly and in a better manner in civil cases if two-thirds of the jury should decide the issues and render their verdict on that vote." 1 Proceedings & Debates of the Constitutional Convention of Idaho, at 229 (1899) (I. W. Hart, ed. 1912).

Another convention member remarked:

"It is by this system [the unanimous jury verdict requirement] that we have repeated trials, and new trials, because juries often fail to agree. . . . It is the people who have the litigation who are benefited by this change because you get verdicts . . . .. I say it is a matter of special interest to the laymen, to the men who have a case in court, to the men who have to pay the costs of litigation . . . .." *Id.* at 224.

W. H. Claggett, the chairman of the Idaho Constitutional Convention, noted that the passage of Article 1, Section 7 (with the three-fourths requirement) would:

"eliminate that which tends to defeat the ends of justice and leave the trial by jury not as it was, under the old original common law, but something like an approximation to it, by abolishing this absurdity which does not prevail anywhere else, or in any portion of our government, of requiring twelve men to agree unanimously before the litigant can get justice in the courts." *Id.* at 156.

It is evident that the founders of the Idaho Constitution recognized that the practical considerations concerning delay, retrials, hung juries, are important considerations in arriving at justice, and that justice is served without prejudicing a fair trial by reducing the requirement of unanimous juries to a three-fourths requirement. In our view, to adopt the argument of appellants and require that the same nucleus

1. "[Art. 1] § 7. RIGHT TO TRIAL BY JURY.— The right of trial by jury shall remain inviolate; but in civil actions, three-fourths of the jury may render a verdict, and the legislature may provide that in all cases of misdemeanors five-sixths of the jury may render a verdict. A trial by jury may be waived in all criminal cases not amounting to felony, by the consent of both parties, expressed in open court, and in civil actions by the consent of the parties, signified in such manner as may be prescribed by law. In civil actions the jury may consist of twelve or of any number less than twelve upon which the parties may agree in open court. Provided, that in civil actions involving not more than five hundred dollars, exclusive of costs, and in cases of misdemeanor, the jury shall consist of not more than six."

of jurors approve each material issue in the case would increase substantially the risk of hung juries and mistrials without any substantial concomitant increase in the fairness or justice of the trial. If there is any question in that regard, the trial court may still grant a motion for a new trial pursuant to I.R.C.P. 59(a) if it appeared to the court that irregularities in the jury's voting pattern prevented a party from having a fair trial. *See Seppi v. Betty*, 99 Idaho 186, 579 P.2d 683 (1978). To adopt a rule that no verdict could be rendered unless the same group of jurors constituting at least three-fourths of the jury voted together on each material issue would result in burdensome retrial of many multi-issue cases, though the jury's appraisal of the facts might be quite plain. *See Scipior v. Shea*, 252 Wis. 185, 31 N.W.2d 199 (1948) (new trial required where at least ten jurors agreed that both plaintiff and defendant were negligent and agreed upon comparative fault, but some of the ten did not agree on all of the specific acts or omissions comprising each party's negligence).

We hold that the special verdict findings in favor of Allison and Schild were not defective merely because the nine jurors who found that Allison was not "guilty of negligence which was a proximate cause of the accident" were different from the nine who so absolved Schild. The record before us does not establish that the jury's voting pattern denied Tillman a fair trial, and the trial court therefore did not abuse its discretion in refusing to grant a new trial. *Seppi v. Betty, supra. Cf. Hollandsworth v. Cottonwood Elevator Co.*, 95 Idaho 468, 511 P.2d 285 (1973) (granting or denying new trial is largely within discretion of trial court).

Affirmed. Costs to respondents.

SHEPARD, C. J., and McFADDEN and DONALDSON, JJ., concur.

BISTLINE, Justice, dissenting.

Without doubt the Court possesses the power to promulgate its own rules of procedure. The legislature, in 1941, in enacting what is now I.C. § 1–213, recognized the rule-making power of the Court, but admonished that court rules "shall neither abridge, enlarge nor modify the substantive rights of any litigant." The case at hand brings to the fore again the question: What is procedural and what is substantive?

In 1957, by order of the Idaho Supreme Court, the Idaho Rules of Civil Procedure were adopted. Rule 1 stated the scope of the rules is to *"govern the procedure"* in the various courts of Idaho. The rules were patterned generally after the Federal Rules of Civil Procedure, with changes being made where Idaho substantive law required changes. Such was true with respect to Rule 48, as it then read, which as applicable here stated that "[t]hree-fourths of the jury may render a verdict." I.C. § 10–217, then in effect and remaining so until repealed effective as of March 31, 1975, provided that a verdict could be rendered when agreed upon by three-fourths of the jurors. This had been a provision of the statutory law since before statehood, going back to the Code of Civil Procedure enacted in 1881. That it was a statute of substantive law is not to be doubted; it also became and is a provision in our Idaho Constitution, art. 1, § 7. The long and eloquent debate at the constitutional convention centered on an amendment which had for its purpose to leave to the legislature the determination of whether three-fourths of a jury could agree upon and render a verdict. It was the will of the convention, however, that the issue was fundamental and should be declared in the Constitution. The amendment was defeated. 1 Proceedings & Debates of the Constitutional Convention of Idaho, at 234 (1889) (I. W. Hart, ed. 1912). That which had been the statutory law was to remain the statutory law, but became firmly emblazoned in Idaho's jurisprudence as a fundamental provision of the Constitution.

In 1975 the legislature was somehow induced to repeal I.C. § 10–217, and at the same time the Idaho Supreme Court amended Rule 48 into 48(a) and 48(b). Rule 48(a) reads, as pertinent, simply that "[t]hree-fourths (¾) of the jury may render a verdict." Notwithstanding that this is

also the language of the Constitution, the Court today blithely agrees to an interpretation of its rule that modifies the Constitution as well by henceforth allowing any nine jurors to determine one issue, while yet another nine may determine another issue, and yet another nine determine a third issue, and so on.

In doing so the Court makes a serious inroad into the area of substantive law and goes beyond the bounds of I.C. § 1–213 and Rule 1 of the Idaho Rules of Civil Procedure. The Court resorts to a lower appellate court decision from New Mexico,[1] *Naumburg v. Wagner*, as primary authority for this drastic change. With this I cannot agree.

Whether the number of jurors who must agree to a verdict be 12, 11, 10, 9, or 8, has nothing at all to do with procedure, but is a substantive matter affecting litigants, not lawyers. Procedure has to do with the rules and regulations which govern the progression of a civil controversy through the courts from the filing of the complaint to a final judgment, and properly deals with the filing of the pleadings, motions, discovery, etc.

There is no need to turn to New Mexico, to New Jersey, or to Arkansas for guidance. The statute, as it was in effect at the time the Constitution was adopted, and for 85 years thereafter, spells out in exact terms precisely what the people of Idaho, through their legislature, considered to be the purpose and intent of the Constitution and of the statute, namely, that a "jury, or three-fourths of them," may agree upon and render a verdict.

The Oregon Supreme Court unanimously decided the same issue exactly contrary to that which the Idaho Court announces today. The Oregon Constitution, art. VII, § 5.7, as is true of the Idaho Constitution, requires a concurrence of three-fourths of the jury in civil cases. Oregon held: "This means that not less than nine jurors must agree to the verdict and the same nine jurors must agree on all issues determined by the verdict." *Shultz v. Monterey*, 232 Or. 421, 375 P.2d 829, 830 (1962). *Clark v. Strain*, 212 Or. 357, 319 P.2d 940 (1958).

In sum, I cannot agree with the Court for the primary reason that its decision in this case invades the area of substantive law, and, under the guise of the Court's rule-making power, purports to interpret its own rule, doing so in a manner which clearly violates a constitutional provision, the effect and meaning of which has been the subject of legislative attention. Courts, because they are the final arbiters, should be especially zealous in upholding the constitution and avoiding usurpation of powers which are those of the people through their legislature.

1. New Mexico's pertinent constitutional provision is unlike Idaho's and unlike Oregon's. The New Mexico Constitution leaves to the legislature to provide or not provide for civil verdicts by less than a unanimous vote.