United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

———————

No. 97-2659

———————

Louis Sanford, also known     *
as Skip Sanford, parent and   *
legal guardian of Loretta    *
Jeanette Sanford; Shelly     *
Sanford, parent and legal    *
guardian of Loretta Jeanette  *
Sanford,                      *
                            *
    Plaintiffs/Appellants,   *
                            *
                            * Appeal from the United States
   v.                      * District Court for the Eastern
                            * District of Arkansas.
                            *
Crittenden Memorial Hospital;  *
Phico Insurance Company;     *
Spectrum Emergency Care, Inc.,  *
                            *
    Defendants,           *
                            *
Deborah Nelson, Dr.,        *
                            *
    Defendant/Appellee.     *

———————

Submitted: January 16, 1998

Filed: April 14, 1998

———————

Before RICHARD S. ARNOLD, Chief Judge, MORRIS SHEPPARD ARNOLD, Circuit
    Judge and SACHS,[1] District Judge.

———————

[1]The Honorable Howard F. Sachs, United States District Judge
for the Western District of Missouri, sitting by designation.

SACHS, District Judge.

Louis and Shelly Sanford, who brought suit on their own behalf and as parents and guardians on behalf of their daughter Jetta Sanford, appeal from the district court's[2] grant of a new trial in their medical malpractice action against Dr. Deborah Nelson.  We affirm.

**I.**

On Friday January 28, 1994, Shelly Sanford took her daughter Jetta Sanford to Dr. Jina Brown's West Memphis, Arkansas, medical office complaining that Jetta had a two week cough, cold symptoms and a fever. Dr. Brown diagnosed Jetta as suffering from an ear infection and prescribed antibiotics.  That evening, Jetta's parents took her to Crittenden Memorial Hospital due to fever and general discomfort.  After being seen by a nurse, Jetta was discharged with instructions to continue the antibiotics.

The next day, Saturday, January 29, 1994, Dr. Deborah Nelson was the pediatrician on call for Dr. Brown.  On that day, Dr. Nelson returned phone calls from Shelly Sanford concerning Jetta's continued high fever at 3:00 p.m. and 3:30 p.m.  Dr. Nelson advised Shelly Sanford to continue with the antibiotics, to take Advil and to call if the symptoms worsened.

The next afternoon, Dr. Nelson returned a call from Louis Sanford, who indicated that Jetta was "lifeless."  Dr. Nelson referred Jetta to LeBonheur hospital, where she was admitted and diagnosed with bacterial meningitis.  Jetta remained hospitalized until February 14, 1994.  Her meningitis was successfully treated, but not before she suffered a total loss of hearing.

---

[2]The Honorable G. Thomas Eisele, United States District Judge for the Eastern District of Arkansas.

-2-

The Sanfords invoked the district court's federal question jurisdiction, bringing suit against Crittenden Memorial Hospital for breach of duty under the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd, and breach of contract. The Sanfords sued Dr. Nelson for negligence under Arkansas law. Prior to trial, the Sanfords' medical expert, Dr. O'Mara, opined that Jetta had meningitis at the time Dr. Nelson was first contacted on January 29, 1994, and that Dr. Nelson's failure to diagnose and treat Jetta for meningitis at that time proximately caused Jetta's hearing loss. Midway through trial, however, after proof that once a person has meningitis there is no drug that will prevent deafness in a surviving patient (thirty percent will become deaf regardless of method or timing of treatment), Dr. O'Mara's opinion changed. Dr. O'Mara testified, contrary to his deposition testimony and the opening statement in the case, that Jetta did not have meningitis as of 3:30 p.m. on September 29, 1994, and that Dr. Nelson could and should have prevented Jetta from contracting meningitis by admitting her to the hospital and administering drugs aimed at treating meningitis.[3]

The district court submitted the case to the jury. The jury returned a verdict in favor of the Sanfords and against both Dr. Nelson (40% fault) and Crittenden Memorial Hospital (60% fault), awarding damages of $2,500,000 for Jetta Sanford and $1,000,000 for her parents. Crittenden settled with the Sanfords. Dr. Nelson moved for judgment as a matter of law and, in the alternative, a new trial. After expressing serious reservations about the legal

---

[3]Dr. O'Mara testified that Jetta should have been tested for meningitis, and that even if the results were negative she should have been treated with intravenous antibiotics or a very strong antibiotic generally used after meningitis has developed. Dr. Nelson's medical expert witness acknowledged that there was some "logic" to Dr. O'Mara's causation theory, and that one particularly powerful antibiotic, Rocephin, might have prevented meningitis. There was further defense testimony that, for reasons noted at trial, Rocephin was not used in standard practice as a preventative.

-3-

adequacy of the medical and scientific testimony introduced at trial, the district court nevertheless denied Dr. Nelson's motion for judgment as a matter of law.  However, the district court granted Dr. Nelson's alternative motion for a new trial, basing its decision on, among other things, the size of the verdict in favor of Jetta Sanford's parents and the element of surprise introduced by Dr. O'Mara's mid-trial change of testimony.

Before the second trial, Dr. Nelson moved for summary judgment, arguing that the testimony of Dr. O'Mara lacked a scientific basis and was therefore insufficient to create an issue of material fact regarding the standard of care or causation.  The Sanfords declined to submit further argument or evidence in response to the motion, and instead expressed their desire to appeal from the district court's grant of a new trial.  The district court granted Dr. Nelson's motion for summary judgment -- providing a final, appealable judgment -- and the Sanfords lodged this appeal challenging only the district court's decision to grant a new trial.[4]

## II.

"The authority to grant a new trial . . . is confided almost entirely to the exercise of discretion on the part of the trial court."  Allied Chem. Corp. v. Daiflon, Inc., 449 U.S. 33, 36 (1980).  We review the district court's decision for a clear abuse of that discretion.  Pitts v. Electro-Static Finishing, Inc., 607 F.2d 799, 803 (8th Cir. 1979).  Where, as here, the size of the verdict provided a basis for a new trial, our review is extraordinarily deferential.  It has long been our opinion that the matter is:

---

[4]The Sanfords' decision to neither oppose the motion for summary judgment nor appeal the district court's order granting it gives rise to an inference that they were unable to adequately respond.  Nevertheless, we will give the Sanfords the benefit of the doubt on this point.

> basically, and should be, . . . for the trial court which has
> had the benefit of hearing the testimony and of observing the
> demeanor of the witnesses and which knows the community and its
> standards; . . . and that we shall continue to review, as we
> have said before, not routinely and in every case, but only in
> those rare situations where we are pressed to conclude that
> there is 'plain injustice' or a 'monstrous' or 'shocking'
> result.

Solomon Dehydrating Co. v. Guyton, 294 F.2d 439, 447-48 (8th Cir. 1961) (Blackmun, J.); Nodak Oil Co. v. Mobil Oil Co., 533 F.2d 401, 411 (8th Cir. 1976).

Although the appropriateness of a new trial is a federal procedural question decided by reference to federal law, Pitts, 607 F.2d at 802, in determining whether a state law claim damage award is excessive, state case law guides our inquiry. England v. Gulf & Western Mfg. Co., 728 F.2d 1026, 1029 (8th Cir. 1984). Under Arkansas law, a verdict is excessive if "'the amount shocks the conscience of the court or demonstrates that the jurors were motivated by passion, prejudice or undue influence.'" White v. Mitchell, 568 S.W.2d 216, 224 (Ark. 1978) (quoting Jordan v. Adams, 533 S.W.2d 210, 213 (Ark. 1976)).

Here the district court concluded that the $1,000,000 verdict in favor of Jetta's parents was "clearly excessive under the law and the court's instructions to the jury" and that the amount "shock[ed] the judicial conscience." After a review of the record, we cannot say that this conclusion was plainly unjust, the lowest requirement for reversal. The uncontested jury instructions specified that the damage award to Jetta's parents was limited to: 1) the reasonable expense of medical treatment and services received by Jetta; 2) the present value of any future medical care equipment reasonably certain to be required; and 3) the reasonable value of Jetta's services and contributions that the parents have lost and the present value of Jetta's services and contributions that the parents are reasonably certain to lose in the future. The

parties stipulated that the parents had incurred $10,892 in medical expenses for Jetta's treatment. Although there was evidence at trial about various equipment available to deaf persons, there was little testimony identifying which of these devices Jetta would need or require or that the likely cost could largely account for the verdict. In light of this, we can not conclude that the district judge abused his discretion in holding that the $1,000,000 verdict in favor of Jetta's parents was excessive.

Counsel for the Sanfords argues, without citation of Arkansas law, that we should fault the district judge for failing to permit nonpecuniary losses "'in the guise of recovery for loss of services.'"[5] We acknowledge that the Arkansas courts appear to allow some "conjecture" by the jury as to what a child's services might have been, in the absence of death or injury, and how they should be valued. Norman v. Gray, 383 S.W.2d 489, 492-3, (Ark. 1964). Federal judicial responsibility for reviewing verdicts in such cases may be reflected, however, by the treatment of a New York recovery for $224,000 for loss of a youth's services, which the appellate court ruled must be reduced to $7,000 per year for the remainder of the child's minority. Martell v. Boardwalk Enterprises, Inc., 748 F.2d 740, 755 (2d Cir. 1984). We believe the district judge in this case was fully authorized to intervene.

The Sanfords argue that the district court should have ordered a partial new trial on the issue of damages, rather than a new trial on both liability and damages. We disagree. The trial judge stated that in his "view . . . the jury was moved by passion and emotion." Where the district court concludes that passion influenced the jurors, a partial new trial on the issue of damages only is generally inappropriate. See, e.g., England, 728 F.2d at

---

[5]This is the annotator's suggested basis for generous recoveries in Annotation, Parent's Right to Recover for Loss of Consortium in Connection With Injury to Child, 54 A.L.R.4th 112, 118 n. 6 (1993).

1029 (cautioning against district court use of the words "bias and prejudice" unless the evidence warrants a new trial on both liability and damages).  "[P]assion or prejudice may affect the decision of the jury on the issue of liability as well as damages."  Everett v. S.H. Parks & Assoc., Inc., 697 F.2d 250, 253 n. 5 (8th Cir. 1983).  Absent unusual circumstances, where a damage award is motivated by passion or prejudice, a remittitur is not appropriate.  See Parsons v. First Investors Corp., 122 F.3d 525, 529 (8th Cir. 1997).  Accordingly, we find no abuse of discretion in the district court's decision to grant a new trial on both liability and damages.

The Sanfords argue on appeal that even if a new trial on grounds of excessiveness of verdict should have been granted as to the parents, the verdict in favor of Jetta should not have been set aside along with it. This argument was not raised in the district court (see Appendix on Appeal at 230-36), and is not subject to review here.[6]

In addition, we believe that the district court correctly cited the dramatic mid-trial shift in testimony by Dr. O'Mara -- from a failure to diagnose to a failure to prevent -- as a reason for granting a new trial. Surprise during trial, by major variance in theory of recovery or defense, undisclosed until after the trial

---

[6]In any event, we are not persuaded that granting a new trial on all the issues in the case, rather than just the questions of liability and damages for Jetta's parents, would constitute an abuse of discretion. See, e.g., Mueller v. Hubbard Milling Co., 573 F.2d 1029, 1039-40 (8th Cir. 1978) (excessive verdict amount on one claim because of passion or prejudice "may well have influenced the jury on the liability issues" on the other claim; new trial on both liability and damages appropriate on both claims).  If this question of a partial new trial had been presented, the district judge would have been entitled to consider his qualms about the medical proof and the fairness of the trial proceedings in determining whether, on balance, a complete new trial should be scheduled.

is underway, is a long-established ground for granting a new trial motion. See, e.g., Perez-Perez v. Popular Leasing Rental, Inc., 993 F.2d 281, 286-88 (1st Cir. 1993) (undisclosed rebuttal medical testimony that driver, who had testified he could "see without glasses if I want to," suffered from seriously disabling glaucoma); Twigg v. Norton Co., 894 F.2d 672, 674-75 (4th Cir. 1990) (mid-trial change of position regarding theory of recovery); Conway v. Chemical Leaman Tank Lines, Inc., 687 F.2d 108, 112 (5th Cir. 1982) (introduction of new theory by expert witness mid-trial constituted unfair surprise justifying new trial).

In light of the expert's shift of theories, we can not conclude that the district judge abused his discretion in finding that the trial testimony on liability and medical causation was confusingly presented and, at best, inconclusive and that a new trial was in order. In sum, we are very far from concluding that this is one of those rare cases in which a new trial decision should be changed on appeal.

For the reasons indicated, we affirm.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.